## IN RE ESTATE OF CHARLES EMERSON.

### R. E. BOYER, Administrator, Appellee, v. RUTH EMERSON et al., Appellants.

**WILLS:** Will (?) or Distributive Share (?)—Election Irrespective of
1    **Statute.** The statute (Sec. 3376, Code Supp., 1913) under which the surviving spouse may be *compelled* to elect between will and distributive share does not prevent such survivor from voluntarily electing, at any time after the probate of the will, to take thereunder, and such election may be shown by the unequivocal declarations, actions, and conduct of the survivor.

**WILLS:** Felonious Homicide by Legatee—Applicability of Statute.
2    The statute (Sec. 3386, Code Supp., 1913) which denies to one who feloniously takes the life of another the right to succeed to the property of such other does not apply to the devisee or legatee of a testator who dies from natural causes, because said devisee or

legatee feloniously takes the life of his codevisee or colegatee and thereby hastens an enlarged devise or legacy.

**DESCENT AND DISTRIBUTION:** Nature of Right to Succeed to
3    Property.  Principle affirmed that the right to succeed to the property of a deceased is not a natural right; that, as a consequence, the legislature has plenary power in the regulation of the right; and that statutes which work a forfeiture of the right as ordinarily given will be treated as in their nature penal, and will be strictly construed.

*Appeal from Union District Court.*—H. K. EVANS, Judge.

## JUNE 25, 1921.

ACTION on behalf of the administrator of the estate of Charles Emerson, deceased, for instructions relative to the distribution of property of the decedent testator, and to have certain provisions of the will construed.  The trial court found that Kate Emerson, surviving spouse, elected to accept the provision made for her under said will, and that there was no statutory forfeiture as against Roy I. Emerson, the only son, by reason of the death of Kate Emerson through homicidal means on the part of Roy I. Emerson.  Defendants appeal.—*Affirmed.*

*Brown & Ferguson,* for appellants.

*Kenneth Davenport, D. Davenport,* and *T. L. Maxwell,* for appellees.

DE GRAFF, J.—Chas. Emerson, of Creston, Iowa, died testate, on the 10th day of January, 1919, leaving surviving him his widow, Kate Emerson, and Roy I. Emerson, his only child and heir at law.  The will of the said Chas. Emerson was duly admitted to probate, and the material provisions of said will involved in the matters in controversy read as follows:

"I give, devise and bequeath to my dearly beloved wife, Kate Emerson, and my dearly beloved son, Roy I. Emerson, all the rents, issues, and profits of all my property and business so long as my wife, Kate Emerson, shall live; these rents, issues, and profits to be divided equally between them, share and share alike.  If my wife should predecease our son, in that case, I

give, devise, and bequeath all my property of every kind, character, and description, wherever situated, to my son, Roy I. Emerson, to be his absolutely. If my son, Roy I. Emerson, should predecease his mother without leaving living issue, then, in that case, I give, devise, and bequeath all of my property of every kind, character, and description to my dearly beloved wife, Kate Emerson, to be hers absolutely. * * * If my wife accepts the provisions of this will, the same shall be in lieu of dower, homestead, or other statutory provision.''

The surviving widow did not elect of record to accept the provisions of the will of her deceased husband in lieu of her distributive share and statutory rights; but it is claimed that she did, by declared oral statement and by a sworn statement not filed for record, clearly indicate her intention to accept under the terms of said will, and did so accept.

The death of Kate Emerson was caused through homicidal means by her son, Roy I. Emerson. She died intestate, May 6, 1919. After the conviction and sentence of Roy I. Emerson for the murder of his mother, and pending his appeal in the Supreme Court of this state, he committed suicide, leaving surviving him his widow, Ruth Emerson.

The administrator of the estate of Chas. Emerson, plaintiff herein, has, under order of court, converted the personal and real property into cash, and the proceeds are now in his hands for the payment of debts owed by the estate, and for final distribution of the residue among such persons as may be determined legally entitled thereto.

The collateral heirs of Kate Emerson, appellants herein, contend that the widow did not elect to accept the provisions made for her under the will of her husband, in lieu of her distributive share, and consequently her heirs are now entitled to have her statutory rights in and to said estate admeasured under the law. It is also claimed by certain collateral heirs that they take by descent the estate of Chas. Emerson by reason of the statutory inhibition of Section 3386 of the Code Supplement, 1913, which, it is contended, prevents Roy I. Emerson or his representatives from taking the estate of the said Chas. Emerson through his mother, Kate Emerson, whose death he feloniously caused. This appeal, therefore, presents for determina-

tion two questions, and the correctness of the decision of the trial court thereon.

First. Did the widow, Kate Emerson, under the facts of this case, elect to accept the provisions of the will of her deceased husband in lieu of her distributive share and statutory rights?

1. WILLS: will (?) or distributive share (?): election irrespective of statute.
Having in mind the time of the death of the testate, Charles Emerson, Section 3376, Code Supplement, 1913, is the controlling statute. The section reads as follows:

"The survivor's share cannot be affected by any will of the spouse, unless consent thereto is given within six months after a copy thereof has been served upon the survivor by the other parties interested in the estate, and notice that such survivor is required to elect whether consent thereto will be given, which consent, when given, shall be in open court, or by a writing filed therein, which shall be entered on the proper records thereof; but if at the expiration of six months no such election has been made, it shall be conclusively presumed that such survivor consents to the provisions of the will and elects to take thereunder."

Prior to the enactment of this law, no election by the surviving spouse was effective unless the election was entered of record, or such facts shown as constituted an estoppel. Section 2452, Code, 1873. This latter section was superseded by legislation now appearing in Code Sections 3270 and 3376. By the former section, the provisions of a will made on behalf of the surviving spouse are presumed to be in lieu of her distributive share and other statutory rights, and therefore reverse the presumption existing prior thereto.

This legislation was judicially noticed in the case of *Arnold v. Livingston,* 157 Iowa 677, and the confusion in decisions caused by the failure to distinguish between prior and subsequent legislation on the subject was pointed out. Under the present law, the widow may elect to accept under the provisions of the will at any time, and this fact may be established by any competent evidence. Such an election, therefore, need not be made within six months, nor is an election of record necessary, except as provided in Section 3376.

A widow's interest in her husband's estate is determined by the law in force at the death of the husband. The case of *Thorpe v. Lyones,* 160 Iowa 415, by reason of the time element involved, was governed by the provisions of Section 2452 of the Code of 1873. Subsequent decisions which control the case at bar include *Berry v. Donald,* 168 Iowa 744; *Schubert v. Barnholdt,* 177 Iowa 232; *Watrous v. Watrous,* 180 Iowa 884.

The record discloses unmistakably that the widow, Kate Emerson, did elect to take under the provisions of the will, in lieu of her statutory rights. The evidence is clear and satisfactory. Her conversations indicate that her choice was in no sense casual. She declared her intention and election after consultations with the administrator, Boyer, with the attorney for the executor of the will, and with the eminent lawyer who drew the will, whom she consulted after the death of her husband, and who was then the acting and qualified probate judge. Against the advice and the recommendation of these men, well versed in the law, and who were fully cognizant of the condition of the estate, she firmly declined to accept their recommendations, and expressed a fixed determination to stand by the terms of the will, and gave her reasons therefor. On the day before her death, she signed and swore to a petition for order as administratrix in the estate of Chas. Emerson, deceased, and in that document she asked that an order be entered, authorizing her, as administratrix with the will annexed, to carry on the business of her deceased husband, in accordance with the terms and provisions of his will. This petition was not filed, by reason of her unfortunate death. Her conduct in these particulars is inconsistent with an election to take under the statute, and her written election, entered of record, would be no more certain and unmistakable. Her election having been made in this manner, and her right of choice having been determined, that election could not be revoked by herself or by her heirs and next of kin. The court was clearly right in its holding in this particular.

Second. Is Roy I. Emerson or his representatives denied the right to accept the benefits under the will, by reason of the death of his mother, caused by felonious means on his part? If such a prohi-

2. WILLS: felonious homicide by legatee: applicability of statute.

bition exists, it must be by virtue of the provisions of Section 3386, Code Supplement, 1913.

Blackstone defines the inheritance law as a "civil convenience, calculated for the peace of mankind."

The right to take property by devise or descent is a statutory privilege, and not a natural right. Such matters are strictly within legislative control. Our state Constitution, in its Bill of Rights, insures and secures the acquiring, possessing, and protecting property as an inalienable right. Constitution of Iowa, Article 1, Section 1. This guaranty, however, ceases to operate at the death of the possessor. Neither our state nor our Federal Constitution secures the right to anyone to control or dispose of his property after his death, nor the right to anyone, whether of kin or not, to take it by inheritance. *Strode v. Commonwealth,* 52 Pa. 181; *Magoun v. Illinois Tr. & Sav. Bank,* 170 U. S. 283; *In re Estate of Magnus,* 32 Colo. 527; *Booth's Exr. v. Commonwealth,* 130 Ky. 88; *Eyre v. Jacob,* 14 Gratt. (Va.) 422. The legislature may restrict the succession of estates of decedents in any manner, and, if it pleased, could absolutely repeal the statute of wills and of descent and distribution. It could, in the exercise of sovereignty, take any or all property, upon the death of the owner, for the payment of decedent's debts, and apply the residue to public uses. Our statutes, therefore, cover the entire field of succession, either by descent or by will. Every conceivable case is comprehended within the statute. Equitable rules cannot be imposed, nor the canons of common or civil law invoked. Consequently, unless the rights of Ruth Emerson, appellee, are barred by the provisions of our statute, she is entitled to take the benefits claimed.

Section 3386 provides:

"No person who feloniously takes * * * the life of another shall inherit from such person * * * or take by devise or legacy from him, any portion of his estate; * * * but * * * all benefits that would accrue to any such person upon the death or disability of the person whose life is thus taken * * * shall become subject to distribution among the other heirs of such deceased person, according to the foregoing rules of descent and distribution in case of death."

> 3. DESCENT AND DISTRIBUTION: nature of right to succeed to property.

This is a public policy statute, governing a particular subject, and the courts may not by judicial interpretation enlarge the legislative intent. *Kuhn v. Kuhn,* 125 Iowa 449; *Bruns v. Cope,* 182 Ind. 289.

The policy of this state, as of all states within these United States, is opposed to the imposition of forfeitures and attainders. The swift and certain administration of our criminal laws in the punishment of crime meets the demand of our public policy; and the common law, which in this particular is not in harmony with the genius and the spirit of our institutions, was in the nature of a punishment imposed upon the guilty person, and the escheat resulting inured to the king or his exchequer.

Had Roy Emerson killed his father, the prohibition of the statute would be called into operation. It may not be applied in this case, without reading something into the statute which was not included therein by the legislature. *In re Estate of Mertes,* 181 Ind. 478. It is, in effect, a penal statute, and must be strictly construed.

The life estate of Kate Emerson, under the will in question, terminated at her death, and consequently there was no interest vested in her which her collateral heirs could inherit. Under Section 3386, it is the inheritance or testamentary devolution from the victim of the crime that is prohibited, and the statute does not purport to forfeit the property of the offender when it is acquired by devise or descent through some other person. The disqualification contended for by appellant does not exist under the facts and the law of the instant case. Wherefore, the decree entered by the trial court is—*Affirmed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.