IN RE ESTATE OF AARON CULBERTSON.

JOHN H. DECKER, Appellant, v. CHARLES D. EVANS, Executor, et al., Appellees.

WILLS: Rights of Devisees—Election by Spouse—Inapplicability of
1    Statute. The statutory provision to the effect that a surviving spouse of a deceased testator, *when executor of the estate,* shall be conclusively presumed to consent to the provisions of the will in his or her behalf unless a refusal so to consent is filed within six months after the will is probated, has no application under a will which was probated *before* the enactment of such statutory provision.

STATUTES: Construction—Non-retroactive Effect. Principle reaf-
2    firmed that statutes are not ordinarily given retroactive effect.

WILLS: Rights of Devisees—Statutes Controlling. Principle reaf-
3    firmed that the rights of devisees are controlled by the statutes which exist at the time the will is probated.

WILLS: Rights of Devisees—Election by Spouse. A surviving wife
4    who, for two years following the death of her testate husband, and until her death, actively participates as executor in the settlement of the estate, who has full knowledge of the provisions of the will in her behalf, who expresses a desire and intention to abide by the will, and who treats herself as a beneficiary under the will, must be

deemed to have elected to take under the will, and not her distribu-
tive share, *even though no notice to elect is ever served on her.*

**WITNESSES:** Competency—Transaction with Deceased—Permissible
Testimony by Executor. An executor may, in his own behalf, tes-
tify to personal communications had by him with his deceased co-
executor.

**WILLS:** Rights of Devisees—Election by Spouse—Non-estoppel. The
heirs of a surviving wife are not estopped to insist that the wife
took her dower interest, and did not take under the will, by the
fact that, separately and apart from the will, and prior to its exe-
cution, the husband had turned over certain funds to a society,
under an agreement that the society should pay interest on the
funds to him and to the wife during their lifetime, and that the
wife received such interest after the death of the husband.

Headnote 1: 40 Cyc. p. 1960. Headnote 2: 36 Cyc. pp. 1205, 1207.
Headnote 3: 40 Cyc. p. 1425 (Anno.) Headnote 4: 40 Cyc. pp. 1975,
1977, 1978, 1979. Headnote 5: 40 Cyc. p. 2342. Headnote 6: 40 Cyc.
p. 1991 (Anno.)

Headnote 2: 25 R. C. L. 787. Headnote 4: 28 R. C. L. 331. Head-
note 6: 28 R. C. L. 331.

*Appeal from Wapello District Court.*—E. S. WELLS, Judge.

OCTOBER 18, 1927.

The executor of the estate of Aaron Culbertson, deceased,
filed a final report, and proposed method of distribution. To
this certain heirs filed objections. On trial, the court held with
the proposed method of administration suggested by the exe-
cutor. One of the objectors, Decker by name, appealed.—
*Affirmed.*

*Chester W. Whitmore,* for appellant.

*George F. Heindel,* for Evans, appellee.

*Roberts & Roberts,* for other appellees.

ALBERT, J.—Aaron Culbertson was married three times.
He died testate on November 21, 1923. His third wife, Emma
D. Culbertson, survived him. There were no children as a re-

**1. WILLS: rights of devisees: election by spouse: inapplicability of statute.** sult of this last marriage. There were five children of a previous marriage, all of age at the time of the death of the father. John H. Decker, the objector to the distribution proposed by the executor, is the son of a deceased brother of Emma D. Culbertson's. Emma died intestate, on the 27th day of February, 1926. Charles D. Evans and Emma D. Culbertson were nominated and appointed executor and executrix of the estate of Aaron Culbertson, and Charles D. Evans was administrator of Emma D. Culbertson's estate.

The will of Aaron Culbertson provided first for the payment of his debts and expenses of his last sickness. The second clause reads as follows:

"I give and devise and bequeath to my wife Emma Culbertson all my property, both real, personal and mixed, of every kind and character of which I may die seized, for her use during her natural lifetime. 3d. I direct that the residue of my estate after the decease of my wife Emma Culbertson shall be divided as follows:"

He then names three of his children, daughters, to whom he bequeathed one dollar each, and the remainder of his estate he directs shall be equally divided among Albert R. Culbertson, the heirs of his daughter Belle Duncan, and his grandson, Sherman Anderson; and in case that Sherman be not living, and leaves no children when the will is finally settled, then Sherman's part is to be equally divided between the son Albert R. and the heirs of his daughter, Belle Duncan.

In the report of the executor, Evans, it is recited that, by the terms of the will of such decedent, his widow, Emma Culbertson, was given the use of his estate during her life; that she did not file a formal acceptance under the will, but during her lifetime, which continued for more than two years from the date of the death of Aaron Culbertson, she participated in the administration, had full knowledge of the provision made for her by the will, and expressed her desire and intent to take under the will of the deceased.

The administrator had a balance on hand of $3,068.17, and proposed to distribute the same by giving to the administrator's estate $214, the income on the Aaron Culbertson estate, and then paying each of the one-dollar bequests specified in said

will, and dividing the remainder into three equal shares: one third to Albert R. Culbertson; one third to Ervin Duncan, sole heir of Belle Duncan; and one third to Sherman Anderson. In other words, under the proposed settlement, the executor assumed that Emma Culbertson accepted the terms of the Aaron Culbertson will, and therefore was entitled only to a life estate in said property; while the objector claims that Emma did not accept the terms of the will of Aaron, and therefore her heirs are entitled to one third of said estate after the debts were paid. Thus the major question we have before us for determination is whether Emma took under the will or under the law.

The evidence in the case shows that, on the death of Aaron Culbertson, Emma Culbertson and Charles D. Evans, who were nominated in the will, were appointed executors of the Aaron Culbertson estate. They filed an inventory and list of property and heirs therein, and several reports as such joint executors. In the ''Report of the Schedule of Real Property and Beneficiaries of the Estate,'' verified by both executors, Emma D. Culbertson, wife, was listed as one of the beneficiaries. The same is true of the preliminary tax report filed for income tax, except that she is the sole person named as beneficiary.

The estate of Aaron Culbertson consisted of the residence property where he and his wife lived, together with money and other securities amounting to less than $5,000. On application, the sum of $600 of the assets of said estate was set apart and paid to Emma as her widow's allowance for the 12 months following the decease of the husband. She continued to live in the residence owned by the deceased until the time of her death, in 1926. She received no other money from the estate of Aaron except the aforesaid widow's allowance. Emma had been a school-teacher prior to her marriage to Aaron, and was not a business woman, not having come in contact with the business world. Her health was not very good after the death of her husband; she was rather feeble, and survived him only a little over two years.

Over objection, the executor, Evans, was permitted to testify:

''We belonged to the same church organization. They [the Culbertsons] were very religious people. In different conversations they told me what they had done in the will. They

talked it over between themselves and this man Smith, who was the representative of the Christian Missionary Society. They told me they had talked it over between themselves, and he had made his will, and given property or money to the society at that time, instead of requiring it to wait until after his death and taking the property under a former will of his. He said the society was going to pay them a fixed amount or a fixed rate of interest on this amount during the balance of both Mr. and Mrs. Culbertson's lives, and at the death of the successor, the interest was to cease, and the money and bonds ($500) were to be the property of the society. I know, after his death, Mrs. Culbertson received this income. After his death, I talked the estate over with Mrs. Culbertson. She was present when these papers were made out, and signed them. I talked it over with her when I was making out the papers."

He further testified, under objection:

"She said she understood fully the terms of the will, and that after her death it was all to go to his children. She never received any of the income from the estate while she lived,— only the use of the real property. The house and lot on which she lived was part of the estate. She continued to live there until her death. She received a pension from the United States government, and the $600 widow's allowance. No notice was ever served on her, requiring her to accept or reject the will. So far as I know, Mrs. Culbertson never filed a refusal to take under the will. She and I were joint executors, and qualified as such on the 17th day of January, 1924."

Among the papers of Emma Culbertson was found what is designated as "A Certificate of Recognition" in the United Christian Missionary Society, certifying that, by the payment of $500 into the treasury of said society, Mrs. Culbertson was constituted a fellowship member of said society. This was dated December 1, 1925. It is to be here noted that this certificate bears date more than two years after the death of Aaron Culbertson. A corresponding certificate was issued to Mr. Culbertson when he donated $500 to the society. This certificate drew 6 per cent interest, or $30 a year, payable semiannually. The witness who produced this certificate in court testified:

"I was not present when the original transaction was had

between Mr. Culbertson and the society, but Mr. Culbertson told me.''

The real question at this point, therefore, is, Under this state of the record, should Aaron Culbertson's property pass under the will to his heirs, or should one third of it, after the debts are paid, pass to the heirs of Emma D. Culbertson?

For a determination of this question we are drawn to a review of some of the statutes of this state which have passed through several mutations. The Territorial Code of 1838 and 1839, page 517, under an act of the legislature approved January 25, 1839, Section 40, reads as follows:

''Every devise of land, or any estate therein, or bequest of personal estate, to the wife of the testator, shall be a bar of her dower in lands, or share of the personal estate, unless it be otherwise expressed in the will, testament, or codicil.''

Section 41 in part reads as follows:

''A widow shall be debarred of her right of dower in the estate of her deceased husband in all cases where any provision shall be made for her in the testator's will as aforesaid, unless within six months, after the authentication or probate of the will, she shall deliver or transmit to the court of probate of the proper county a written renunciation, which may be in the following form * * * 'do hereby renounce and quit all claim to any bequest or devise made to me by the last will and testament of my said deceased husband, * * * and I do elect to take, in lieu thereof, my dower or legal share of the estate of my said husband.' Which said letter of renunciation shall be filed in the office of the judge of probate, and shall operate as a complete bar against any claim which such widow may afterwards set up to any provisions which may have been thus made for her in the will of any such testator, and by thus renouncing all claims to a devise or bequest as aforesaid, such widow shall thereupon be entitled to the one-third part of the real estate of her said deceased husband for life, and one-third part of the personal estate forever, which shall remain after the payment of all just debts and claims against the estate of such testator.''

It will be seen, therefore, that, under these acts, where the husband made provision for his wife in the will, she was barred from claiming dower unless within six months she filed renunciation, in which case she was entitled to the common-law dower

in one third of his real estate, and to a fee in one third of his personal estate after the debts were paid. In other words, the law held that, under such circumstances, she took under the will, unless she filed written renunciation to her rights thereunder.

Section 1394, Code of 1851, provided:

"One third in value of all the real estate in which the husband at any time during the marriage had a legal or equitable interest, which has not been sold on execution or other judicial sale and to which the wife has made no relinquishment of her rights, shall under the direction of the court be set apart by the executor as her property in fee simple upon the death of the husband if she survive him."

Section 1407:

"The widow's dower cannot be affected by any will of her husband if she objects thereto and relinquishes all rights conferred upon her by the will."

Section 1390 provides that the personal property, after the payment of debts, shall be distributed to the same persons and in the same proportions as though it were real estate.

The Code of 1851, therefore, changed the wife's dower right from a life estate in the real estate at common law to a fee title. It still, however, carried the same thought as the Code of 1839: to wit, that the burden was on the wife to object, and relinquish her rights under the will, to avoid its force and effect.

The above quoted Section 1407 appears in terms as Section 2435, Revision of 1860. The section as to distribution of personal property (2422) is identical with the same section in the Code of 1851. In the intermediate time, however, the section governing the wife's dower was changed by Chapter 61 (page 97), Laws of the Fourth General Assembly, to take effect July 1, 1853, in which her dower in real estate was still fixed at one third in value, and it was further provided that such estate in dower be and remain the same as at common law. This legislative act appears as Section 2477, Revision of 1860. At this point, the provisions or terms of the will still prevailed, unless the widow objected thereto and relinquished all rights conferred by the will. This Section 2477, Revision of 1860, was repealed by Chapter 151, Acts of the Ninth General Assembly, which went into effect on April 18, 1862, as follows:

"One third in value of all the real estate in which the husband at any time during the marriage had a legal or equitable interest, which has not been sold on execution or other judicial sale, to which the wife has made no relinquishment of her right, shall, under the direction of the court, be set apart by the executor, administrator or heir, as her property in fee simple, on the death of the husband, if she survive him."

This enactment by the ninth general assembly was incorporated in and became a part of the Code of 1873, as Section 2440. Section 2435, Revision of 1860, was changed in the Code of 1873 to Section 2452, reading as follows:

"The widow's share cannot be affected by any will of her husband, unless she consents thereto within six months after notice to her of the provisions of the will by the other parties interested in the estate, which consent shall be entered on the proper records of the circuit court."

Up to the Code of 1873, it is, therefore, apparent that the widow took under the will unless she objected thereto and relinquished her rights. By this provision of the Code of 1873 she was held not to take under the will unless she consented thereto. It is also apparent under this section that there is no requirement that her consent should be in writing.

Section 3376, Code of 1897, was a substitute for the previous sections on this matter, and reads as follows:

"The survivor's share cannot be affected by any will of the spouse, unless consent thereto is given within six months after a copy thereof has been served upon the survivor by the other parties interested in the estate, and notice that such survivor is required to elect whether consent thereto will be given, which consent, when given, shall be in open court, or by a writing filed therein, which shall be entered on the proper records thereof; but if at the expiration of six months no such election has been made, it shall be conclusively presumed that such survivor consents to the provisions of the will and elects to take thereunder."

The rule governing the disposition of personal property providing that the same, after the payment of debts, should be distributed as real estate, continued in Code of 1897, as Section 3362. The rule giving to the wife one third in fee in the real property was continued in Section 3366. Under the above Sec-

tion 3376, it is apparent that the primary right of the widow in an estate was her dower, unless she consented, either orally in open court, or by a writing filed therein, to take under the provisions of the will.

Section 3377, Code of 1897, provides:

"Within six months after written notice to the survivor, given by any heir of a deceased intestate, or by the administrator of his estate in case a·sale of the real estate is necessary to pay debts, the survivor may elect to take the distributive share, or the right to occupy the homestead, which election shall be made and entered of record as provided in the preceding section. In case of a failure to make such election, the right to occupy the homestead in lieu of the distributive share shall be waived."

These statutes were the law until July 4, 1919, when an act passed by the thirty-eighth general assembly (Chapter 192) repealed Section 3376, Code Supplement, 1913, and enacted in ` lieu thereof the following:

"The survivor's share cannot be affected by any will of the spouse unless consent thereto is given as hereinafter provided. Where a voluntary election to take or refuse to take under a will has not been filed by a surviving spouse within sixty days from the date when the will of a decedent has been admitted to probate, it shall be the duty of the executor appointed to administer the will of such decedent in this state, to cause to be served, in the manner required for service of original notice, upon the surviving spouse, a notice, in writing, advising such surviving spouse that the will of such decedent has been admitted to probate, stating the name of the court and the date when the will was admitted to probate, and requiring that such spouse, within six months after the completed service of such notice to elect whether he or she shall take or refuse to take under the provisions of the will of such decedent, and that such election may be made in open court or by writing filed in such court, which election, when made, shall be entered on the proper records thereof. The same notice may be given by any other person interested in the estate of decedent, and shall have the same force and effect as if given by the executor. In case such surviving spouse does not make such election within six months from the date of the completed service of such notice, it shall ·

be conclusively presumed that such survivor consents to the provisions of the will and elects to take thereunder; unless within such period of six months, an affidavit shall be filed setting forth that such surviving spouse is mentally incapable of making such election.''

This section further provides for the method of election in case the spouse is mentally incapable of making such election.

Sections 3376 and 3377, above quoted, as amended by Chapter 192, Acts of the Thirty-eighth General Assembly, continued to be the law until October 28, 1924, when the clause hereinafter italicized took effect as part of the Code of 1924. In this latter Code, Section 3376, as amended by the thirty-eighth general assembly, was incorporated in full, except that it was divided into five sections, designated as Sections 12006, 12007, 12008, 12009, and 12010. Section 12010 was amended in the Code of 1924 to read as follows:

''In case such surviving spouse does not make such election within six months from the date of the completed service of such notice, *or if such surviving spouse shall be the executor of the will and fails, within six months after the will is admitted to probate, to file with the clerk of the court an election to refuse to take under the provisions of the will of the deceased, it shall be conclusively presumed that such survivor consents to the provisions of the will and elects to take thereunder*; unless within such period of six months an affidavit should be filed setting forth that such surviving spouse is mentally incapable of making such election.''

It is the claim of the appellant herein that the italicized part of the above section is controlling in the case at bar. To this we will give attention later.

It is apparent from a perusal of the aforesaid statutes prior to 1873 that, when a will made provisions for the wife, it was controlling, unless the wife objected thereto and relinquished her dower. The Code of 1873, however, changed this rule, and made the dower right the primary right, regardless of the will, unless the widow consented to and accepted the terms of the will. Such is still the rule in this state.

It is conceded that Emma D. Culbertson did not file any written consent or give any oral consent in open court which was made a matter of record in this case. Primarily, then, it

must follow that she was entitled to her dower right in this property, unless it be that the contention of the appellant is true, that she, having been one of the executors of the estate, under Section 12010, Code of 1924, is conclusively presumed to consent to the provisions of the will. At the threshold of this question we are confronted, however, with the question of whether or not this italicized provision of the Code of 1924 is applicable. Aaron Culbertson died November 21, 1923, and his will was admitted to probate on December 20, 1923. Since the aforesaid Section 12010 did not go into operation for nearly a year after the death of Culbertson and the admission of his will to probate, the question is whether or not this statute is in any way controlling on the question before us. Just what was Mrs. Culbertson's status after the probate of this will?

The consideration of the above quoted section of the Code of 1924 being passed, for the moment, it was settled in this state that, where the widow is named as executrix and accepts the trust and settles the estate, her acts in so doing will not preclude her from claiming her distributive share. *In re Estate of Proctor,* 103 Iowa 232; *Thorpe v. Lyones,* 160 Iowa 415.

Under the aforesaid section of the Code of 1924, Section 12010, if this section was in force at the time this will was probated, there could be no question but that Mrs. Culbertson, being executor, and having failed, within six months after the probate of the will, to file her election, would be conclusively presumed to have consented to the provisions of the will. The question is, therefore, narrowed down to the simple question of whether or not this case is controlled by the aforesaid section of the statute. As heretofore pointed out, it did not go into operation until almost a year after the probate of this will. Her rights were fixed at the time the will was probated. In the case of *Thorpe v. Lyones,* supra, it is said:

2. STATUTES: construction: non-retroactive effect.

"It will be noticed that the testator * * * died in 1890, and prior to the enactment of the present statute, and the rights of the parties to this suit are to be determined by the law in existence at the time of his death."

3. WILLS: rights of devisees: statutes controlling.

See, also, *Berry v. Donald,* 168 Iowa 744; *In re Estate of Emerson,* 191 Iowa 900. That statutes of this character are not to be given retroactive effect

is the rule of this court. *Herriott v. Potter,* 115 Iowa 648; *Gilbertson v. Ballard,* 125 Iowa 420; *Swartz v. Andrews,* 137 Iowa 261; *Lacey v. State Treasurer,* 152 Iowa 477. See, also, 2 Sutherland on Statutory Construction (2d Ed.) 641. Cooley's Constitutional Limitations (7th Ed.) 529, states the rule to be that the statute should be construed as having a prospective operation, unless its terms show a legislative intent that it should operate retrospectively. 1 Kent's Commentaries (14th Ed.) *455 says that the laws are not to be construed as applying to cases which arose before their passage, unless that intention is clearly declared. That such is the rule of the United States Supreme Court, see *Shwab v. Doyle,* 258 U. S. 529 (66 L. Ed. 747).

Under the general rules of construction, it therefore cannot be held that this statute has a retroactive effect if the rights of Mrs. Culbertson were vested at the time of her husband's death. That they were vested, see the above cited case of *Thorpe v. Lyones,* supra; *Burke v. Barron,* 8 Iowa 132; *Bottorff v. Lewis,* 121 Iowa 27; *Davis v. O'Ferrall,* 4 G. Greene 168; *Swartz v. Andrews,* supra.

At the time Mrs. Culbertson was appointed executrix of this estate, as we have heretofore shown, the fact that she accepted, qualified, and acted as such executrix would not prevent her from claiming her dower right. Her status thus fixed could not be changed by subsequent legislation to her prejudice, nor could it be affected adversely by such act of the legislature. We conclude, therefore, that her rights were not affected by the section of the Code above referred to, Section 12010, Code of 1924.

The fact that, at the time of the probate of this will, the statute required the executor to serve notice on the surviving spouse to elect whether she would take under the will, and that

4. Wills: rights of devisees: election by spouse.

Emma was one of the executors herein, and failed to serve said notice, has some evidentiary value in the determination of this case. As heretofore recited, the evidence in the case does show that she applied for and received the widow's allowance of $600; that she continued to live in the residence owned by the deceased until the time of her death, in 1926. This latter fact is of little evidentiary value, because it was a homestead, and under the

statute, she had a right to occupy the same until dispossessed in a legal way. Her coexecutor, banker, and intimate friend testifies that Mrs. Culbertson told him what had been done in the will. He said he talked it over with her when he made out the reports, and she said that she understood the terms of the will fully, and that after her death it was all to go to his (Culbertson's) children. This testimony by the executor as to conversations with Mrs. Culbertson prior to her decease was objected to under Section 11257, Code of 1924; but it is made admissible by the following section, 11258. Objection to the testimony was properly overruled.

5. WITNESSES: competency: transaction with deceased: permissible testimony by executor.

We have narrowed the case down to the simple question of whether or not, under the evidence in the case, it can be said that Mrs. Culbertson consented to accept the terms and provisions made for her by this will. It is apparent from what we have already said that, under the circumstances of this case, none of the presumptions provided for in the statute have any operation; and we are driven to a return to the naked provisions of the statute, Section 3376, Code of 1897, as amended by the Acts of the Thirty-eighth General Assembly, heretofore referred to, the material part for our consideration being the part which says that "the survivor's share cannot be affected by any will of the spouse unless consent thereto is given," etc., as marked out in the statute. A careful reading of these various sections of the statute leads to the conclusion that a wife, under these circumstances, may voluntarily, or by acts, conduct, and words, consent, even though no notice is served on her.

In *Watrous v. Watrous,* 180 Iowa 884, at 899, we said:

"It was held in *Arnold v. Livingston,* 157 Iowa 677, that the fact of an election by the survivor might be proved by other evidence than the record of the court, and that such election could be thus made without waiting for the service of notice to elect. In *Berry v. Donald,* 168 Iowa 744, the court held that the evidence of such election to take under the will, in lieu of distributive share, must be clear and satisfactory."

In the case of *In re Estate of Emerson,* supra, the decedent by will gave to his wife and his son the rents, issues, and profits of all the property and business during the life of his wife, Kate Emerson, to be equally divided. If she predeceased the

son, then all of his property was to go to his son absolutely. Charles Emerson died on January 10, 1919, and the son, Roy Emerson, killed his mother, Kate Emerson, on May 6, 1919. Kate Emerson had made no election of record to accept the provisions of the will in lieu of her distributive share and statutory rights. In that case we said:

"Under the present law, the widow may elect to accept under the provisions of the will at any time, and this fact may be established by any competent evidence. Such an election, therefore, need not be made within six months, nor is an election of record necessary, except as provided in Section 3376."

Mrs. Culbertson was quite familiar with this estate and all its details, and was coexecutor with Evans in making out all the reports, inventories, etc., both of the estate and for the purpose of inheritance tax. She stated to her coexecutor that she understood the will fully, and wanted the property to go to her husband's children. This evidence is undisputed, and we are satisfied that it shows a final determination in her mind that she consented to and was willing to take and accept the terms and provisions of the will. Under these facts, and also the fact that it was her duty as executrix to serve notice requiring election,—and this she was bound to know, under the law,—we feel that there is a sufficient showing to meet the requirements of the law; and it must be held that she consented to take under the will.

One other question is raised in the case, and that is that, because the husband turned over $500 to the Christian Missionary Society, with an agreement on the part of the society to pay to him and his wife, or the survivor thereof, interest on this $500 during their or the survivor's life, it is claimed to be an estoppel against the heirs of Emma D. Culbertson, because she obtained benefits other and different from the share she would have obtained as her distributive share under the will. We are unable to see how this claim can be sustained. If there was any agreement between Culbertson, his wife, and the Christian Missionary Society, it was wholly an independent transaction, and could in no way affect the questions we have before us.

6. WILLS: rights of devisees: election by spouse: non-estoppel.

Our conclusion is, therefore, that, under the record before us, Emma D. Culbertson, during her lifetime, consented to take

under the terms of the will of Aaron Culbertson; hence the ruling of the district court was right.—*Affirmed.*

EVANS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.