Leonard W. **FRYER** and Floyd F. Whitmore, Executors of the Manford E. Fryer Estate, Plaintiffs,

v.

**UNITED STATES of America,**
Defendant.

Civ. No. 74-26-W.

United States District Court,
S. D. Iowa, W. D.

July 31, 1975.

Len G. Leonard, Corning, Iowa, Robert F. Leonard, Sidney, Iowa, for plaintiffs.

Thomas R. Jones, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

### ORDER

HANSON, Chief Judge.

This matter is before the Court by way of cross motions for summary judgment. Plaintiffs are the co-executors of the Manford F. Fryer Estate (the Estate); defendant is the United States of America. To date, the parties have filed a stipulation of facts, accompanied by legal briefs, addressed to the issue of whether a tax refund is owed to the Estate. Specifically, plaintiffs contend that the defendant disregarded the surviving spouse's election to take against the will and thereby erroneously "failed to allow" a marital deduction in computing the estate taxes due. Parties correctly concur that this Court has jurisdiction by virtue of 28 U.S.C. § 1346(a)(1) (1970).

The Court's considerable effort in analyzing and researching the parties' legal claims has been complicated by the fact that the Iowa Probate Code, under which the issue herein is to be determined, has undergone significant changes through the years. Simply stated, that issue is whether the surviving

spouse, Edna M. Fryer, had elected to take under or against the will. If Edna Fryer took under the will, she would receive a life estate in nearly all of her husband's property. Such ownership does not qualify an estate for a marital deduction. 26 U.S.C. § 2056(b)(1)(1970). If she validly elected to take against the will, she would receive a dower interest in the property, an interest that does qualify an estate for a marital deduction. 26 U.S.C. § 2056(e)(3). (1970).

Based on its research of this matter, the Court concludes that a final determination of the ultimate issue in the case turns on a resolution of factual issues that preclude both parties' summary judgment motions. *See* F.R.Civ.P. 56(c). The precise issue raised by this case is whether the conduct of a surviving spouse, who has received no notice of her election rights, can be construed as manifesting an election to take under the will. § 633.237, Iowa Code (1973). While Iowa caselaw contains numerous decisions discussing the significance of a surviving spouse's conduct in similar situations, this Court has found no such decisions under the present and applicable probate code. Because the parties have cited numerous conduct cases that arose under differing Iowa statutory contexts, a thorough analysis of these past statutory schemes is essential to an understanding of the role of a surviving spouse's conduct under current Iowa law. Before analyzing the conduct issue under relevant Iowa law, however, a brief recitation of the pertinent facts and legal contentions of the parties is necessary.

### I.

The parties' pretrial stipulation establishes that the District Court for Montgomery County, Iowa, admitted the Manford F. Fryer will to probate on July 13, 1972. Plaintiffs Floyd F. Whitmore and Leonard W. Fryer (a son of the decedent who possessed power of attorney with respect to his parent's business and personal affairs) were duly appointed co-executors of the Estate. Lee R. Watts, attorney for the Estate until his death on January 16, 1973, did not inform the co-executors of their duty to serve notice on the surviving spouse of her right to elect against the will. Said co-executors remained unaware of the surviving spouse's right to elect until informed of the same by their present attorneys in March 1973.

On March 27, 1973, Leonard Fryer, acting under his power of attorney for Edna Fryer, signed and filed with the District Court a Written Election of Surviving Spouse In Relation To Will, stating that Edna Fryer refused to take under the will of Manford Fryer. An identical document was signed by Edna M. Fryer and filed with the District Court on July 16, 1973. On September 19, 1973, plaintiff co-executors filed a Claim for Refund in the amount of $30,354.82 of taxes paid on the Estate, and they thereafter filed an amended tax return indicating the surviving spouse's election against the will. The present litigation was commenced June 11, 1974.

In support of their respective summary judgment motions, the parties address the issue of whether Edna Fryer, by word, conduct, or otherwise, made a valid and binding election to take under or against the will prior to the filing of either Written Election of Surviving Spouse In Relation To Will. The parties properly agree that the issue is to be resolved by reference to Iowa law.[1]

Plaintiff co-executors, allegedly pursuant to Sections 633.236 and 633.237 of

---

1. While federal law fixes the federal tax consequences of property transferred by death, state law determines the nature of such transfers and the manner by which legal relationships are affected. *See Folkerds v.* *United States,* 494 F.2d 749 (8th Cir. 1974); *United States v. Mitchell,* 403 U.S. 190, 194–206, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971).

the Iowa Probate Code (1973), contend that a surviving spouse can lose the election right in relation to a will *only* if notice is served upon him as prescribed by statute or the surviving spouse is the executor and fails to elect within the provided statutory period. Since Edna Fryer neither received notice nor was executrix of the will, the election right ostensibly remained open until such time as she filed a rejection of the will with the District Court. Plaintiffs alternatively submit that if an election in relation to a will can be implied solely from conduct and without express notice, then any acts taken by Edna Fryer were not of the unequivocal and knowledgeable nature needed to establish a clear intention to elect. Hence, regardless of the statutory reading, the surviving spouse's filed election to take against the will prevails, and the Estate is entitled to a tax refund for a disallowed marital deduction in the amount of $30,354.82.

Defendant counters that Section 633.-237 can be satisfied without either notice or filing if the surviving spouse's conduct, as Edna Fryer's conduct, clearly manifests an election under the will. Specifically, defendant points to three actions that have been stipulated as occurring prior to the second Written Election: (1) the surviving spouse, through a son holding power of attorney, authorized an attorney's filing of a United States Estate Tax Return that claimed she would take under her deceased husband's will; (2) the surviving spouse assisted an executor with the filing of a 1972 joint income tax return that reported all income from the securities listed on the initial estate tax return, thereby demonstrating her intent to take the provided life estate under the will; and (3) the surviving spouse's son and his fellow co-executor, who sought authorization to sell deceased's former residence, drafted a petition that represented surviving spouse as possessing a life estate in said property. This conduct allegedly constitutes a binding election to take under the will, and the

defendant therefore denies plaintiff's contention that estate taxes were erroneously overassessed against the Manford F. Fryer Estate.

## II.

The parties base their legal arguments on cases dating back to the Iowa Probate Code of 1873. An examination of certain subsequent developments of these statutes must precede any ruling upon the pending motions. In making such an examination, the Court has determined that the only fundamental revisions possibly affecting the issue presented herein were of 1897 and 1963.

Section 2452 of the Code of 1873 provided as follows:

> The widow's share cannot be affected by any will of her husband, unless she consents thereto within six months after notice to her of the provisions of the will by the other parties interested in the estate, which consent shall be entered on the proper records of the circuit court.

To understand when an election by the surviving spouse became necessary, this Section had to be read *in pari materia* with Section 2322 of the 1873 Code, which set forth the presumption that any devise in the will was in addition to the widow's statutory distributive share (hereinafter referred to as "dower"). *See In re Estate of Culbertson,* 204 Iowa 473, 480, 215 N.W. 761 (1927); *Hahn v. Dunn,* 211 Iowa 678, 685, 234 N.W. 247 (1935). These statutes were conjointly construed to mean that " . . . [the surviving spouse] was not bound to make any election, but might enjoy what was devised to her until served with notice to elect." *Byerly v. Sherman,* 126 Iowa 447, 452, 102 N.W. 157, 159 (1905). Consequently, as noted by plaintiff, the election provisions of Section 2452 were interpreted in *Howard v. Watson,* 76 Iowa 229, 231, 41 N.W. 45, (1888) in the following manner:

> The statutory thought is that if no person interested in the estate, as heir or otherwise, objects, or causes the

widow to be served with the required notice, she is not bound to make any election, but may enjoy what has been devised to her. She has six months after notice in which to make her election, and not six months after she obtains knowledge of the provisions of the will. She can remain passive until such notice is given.

The Supreme Court conceded in *Byerly, supra,* 126 Iowa at 450, 102 N.W. 157 that its decisions under Section 2452 were inconsistent as to whether the out-of-court conduct of a surviving spouse, who received no notice, could ever be construed as manifesting an election to take under the will. Later cases under Section 2452, assuming a surviving spouse's conduct could be so construed, concluded that such conduct must at least amount to estoppel:

> . . . [I]f the doctrine of estoppel is ever to be applied in such cases it certainly should require a very clear and conclusive showing of some deception or misleading act upon her part to the injury of others to impose upon her the loss of her right either under the will or under the statute. *Miksch v. Miksch,* 179 Iowa 716, 722, 161 N.W. 675, 677 (1917).

With the ratification of the Iowa Probate Code of 1897, the surviving spouse's election rights were considerably revised. Section 2322 of the 1873 Code was replaced by Section 3270, which provided that a devise to a spouse was to be presumed in lieu of dower unless a contrary intent was manifested by the terms of the will. Such a presumption was to carry forward as Section 11847 through the Codes of 1924 and 1939, and as Section 633.2 in the Code of 1946. *See Sefcik v. Sheker,* 241 Iowa 571, 573, 41 N.W.2d 709 (1950). Also, the above-quoted Section 2452 of the 1873 Code was replaced in 1897 by Section 3376:

> The survivor's share cannot be affected by any will of the spouse, unless consent thereto is given within six months after a copy thereof has been served upon the survivor by the other parties interested in the estate, and notice that such survivor is required to elect whether consent thereto will be given, which consent, when given, shall be in open court, or by a writing filed therein, which shall be entered on the paper records thereof; but if at the expiration of six months no such election has been made, it shall be conclusively presumed that such survivor consents to the provisions of the will and elects to take thereunder.

Although this Section was subsequently expanded as to its procedural requirements and eventually split into several sections, it carried forward in its basic concept and presumptions through the Codes of 1924 and 1939 as Sections 12007 and 12010 and as Sections 636.22 and 636.24 in the Code of 1946. *See Culbertson, supra,* 204 Iowa at 480–82, 215 N.W. 761.

Section 3376 of the 1897 Code, and its derivatives, clearly differed from Section 2452 of the 1873 Code in its expressed presumption that the surviving spouse accepted rather than rejected the will when no election was filed after formal notice. But, when interpreting the revisions of Section 3376 and Section 3270 (devise to surviving spouse presumed to be in lieu of dower), the Supreme Court of Iowa enunciated another equally important change—the conduct of a surviving spouse, who did not receive notice, could unquestionably be construed as manifesting a knowledgeable and intentional election to take under the will.

> Election is to choose between rights, or to choose one thing rather than another. The election determines the choice, and this choice may be shown by expressed words of election, and . . . the actual taking of the thing bequeathed, or it may be shown in any other manner that clearly makes manifest that an election has been made. *Arnold v. Livingston,* 157 Iowa 677, 139 N.W. 927 (1913).

That an election without notice could be established by "any competent evidence" was an interpretation which remained intact through the 1946 Code. *See In re Estate of Emerson,* 191 Iowa 900, 903, 183 N.W. 327 (1921); *Hahn v. Dunn,* 211 Iowa 678, 682, 234 N.W. 247 (1931); *Mensinger v. Hass,* 240 Iowa 71, 76, 35 N.W.2d 461 (1949).

In addition to establishing that non-statutory consent could constitute an election, the many post-1897 Code decisions consistently held that the out-of-court conduct manifesting such election could result from acts and deeds short of estoppel.

> The decisions under [the Code of 1897] and later codes seem definitely to have abandoned the idea that election by conduct must amount to estoppel. . . . We think the present doctrine of election is not based on any fundamental concept of estoppel in its technical sense of having misled someone to change his position in reliance on it. *See Sefcik, supra,* 241 Iowa at 576, 41 N.W.2d at 713.

To summarize, under the 1873 Code, the Iowa Supreme Court rather ambiguously concluded that if conduct without notice could constitute election, such conduct must amount to estoppel; but, under the Codes of 1897 through 1946, the Court clearly concluded that conduct without notice could constitute election, even if short of estoppel.

In 1963, the probate code underwent major revision. The following relevant statutes, along with the incorporated 1965 amendments to Section 633.237, replaced those of the 1946 Code and were in effect when the Manford Fryer will was admitted to probate.

> 633.236. Right of surviving spouse to elect to take against will.

> When a married person dies testate as to any part of his estate, the surviving spouse shall have the right to elect to take against the will under the provisions of sections 633.237 through 633.246.

633.237 Presumption that surviving spouse elects to take under will.

> Where a voluntary election to take or refuse to take under a will has not been filed by a surviving spouse within two months of the date of the second publication of notice of admission of the will to probate, and the surviving spouse is not the executor of such will, it shall be the duty of the executor to cause to be served a written notice upon the surviving spouse in the manner directed by the court, advising the surviving spouse that the will of such decedent has been admitted to probate, stating the name of the court where the will was admitted and the date when the will was admitted to probate, and notifying such spouse that unless within four months after service of such notice, he files an election in writing with the clerk of such court refusing to take under the provisions of such will, such surviving spouse shall take under the provisions of the will; provided that if the surviving spouse files his election to take under the will at any time the requirements of this section for serving notice are thereby waived; provided, further, that if within the before described period of four months an affidavit is filed setting forth that such surviving spouse is incapable to make such election, the court shall determine whether there shall be an election to take against the will in accordance with section 633.238; provided further, that the court on application may, prior to the expiration of such period of four months, for cause shown, enter an order extending the time for making such election. If such surviving spouse shall be an executor of the will and fails, within six months after the date of the second publication of notice of admission of the will to probate, to file with the clerk of the court an election to refuse to take under the provisions of the will of the deceased, it shall be conclusively presumed that such survivor

consents to the provisions of the will and elects to take thereunder; provided further, that the court on application may, prior to the expiration of such period of six months, on cause shown, enter an order extending the time for making such election.

633.242 Rights of election personal to surviving spouse.

The right of the surviving spouse to elect to take against the will and the right of the surviving spouse to occupy the homestead are personal. They are not transferable, and cannot be exercised for him subsequent to his death. If the surviving spouse dies prior to filing an election to take against the will, it shall be conclusively presumed that the surviving spouse takes under the provisions of the will.

633.243 Filing elections.

The election to take against the will and the election to occupy the homestead shall be filed in the office of the clerk.

633.245 Record of election.

The elections of the surviving spouse under section 633.236, 633.240 or 633.244 shall be entered on the proper records of the court.

633.268 Presumption attending devise to spouse.

Where the testator's spouse is named as a devisee in a will, it shall be presumed, unless the intent is clear and explicit to the contrary, and except as provided in section 633.272, that such devise is in lieu of the intestate share and homestead rights of the surviving spouse.

In contrasting the immediately preceding sections with those of the 1873 and 1897 Codes, variations as to the presumption attending the surviving spouse's election rights and the procedural aspects of such an election become evident. The Iowa legislature has reversed the former overriding presumption that the surviving spouse took the dower as against the will (see introductory clauses in Section 2452, 1873 Code,

and Section 3376, 1897 Code) to one of conclusively presuming that the spouse takes under the will should death precede the filing of an election to take against the will. *See* 1963 Code, § 633.242. Since the 1946 Code, the legislature has also amended the statutes as to the time of formal election and method of filing. *See* Hines, *Freedom of Testation and the Iowa Probate Code,* 49 Iowa L.Rev. 724 (1964). Most importantly for purposes of this analysis, however, are the presumptions that were retained from the 1897 Code and its derivatives. Contrariwise to the 1873 Code and consistent with the 1897 Code, Section 633.268 of the 1963 Code provides that a devise in the will is presumed to be in lieu of dower. And Section 633.237 retains the presumption of the 1897 Code that the surviving spouse accepts the will if no election is filed after the formal notice.

The issue now before this Court raises a matter of first impression: under the 1963 Code, what constitutes election by the surviving spouse to take under the provisions of the will? Clearly, from the face of Section 633.237, the surviving spouse can make an election either by filing on her own initiative or by filing or not filing after receiving formal notice. But the query critical to this action is whether, pursuant to the current statutes, the conduct of a surviving spouse, who has received no notice, can be construed as manifesting an election to take under the will. The Court concludes that it can be so construed.

If the above-quoted Section 633.237 of the present Code is compared with Sections 636.22 and 636.25 of the 1946 Code (derivatives of the 1897 Code and the basis for the most recent Iowa Supreme Court decisions holding that conduct without notice can indicate election) the terminology and contents are found to be very similar. The 1946 Code provides:

636.22 Election between will and dower—notice. Where a voluntary

election to take or refuse to take under a will has not been filed by a surviving spouse within sixty days from the date when the will of a decedent has been admitted to probate, it shall be the duty of the executor appointed to administer the will of such decedent in this state, to cause to be served, in the manner required for service of original notice, upon the surviving spouse, a notice in writing, advising such surviving spouse that the will of such decedent has been admitted to probate, stating the name of the court and the date when the will was admitted to probate, and requiring that such spouse, within six months after the completed service of such notice, elect whether he or she shall take or refuse to take under the provisions of the will of such decedent, and that such election may be made in open court or by writing filed in such court.

636.25 Election by law—exception. In case such surviving spouse does not make such election within six months from the date of the completed service of such notice, or if such surviving spouse shall be the executor of the will and fails, within six months after the will is admitted to probate, to file with the clerk of the court an election to refuse to take under the provisions of the will of the deceased, it shall be conclusively presumed that such survivor consents to the provisions of the will and elects to take thereunder; unless within such period of six months an affidavit should be filed setting forth that such surviving spouse is mentally incapable of making such election.

While it is true that the 1963 Code contained some minor procedural changes and reversed the presumption of the 1946 Code as to what occurs should the surviving spouse die before the election, the Court finds that these revisions do not alter the concept that the surviving spouse's conduct can manifest election to take under the will. None of the new probate sections are inconsistent with such an interpretation, and Sections 633.243 and 633.245, which require a court filing *only for an election against the will*, are unquestionably in support.

The Court, therefore, concludes that plaintiffs' arguments underlying the contention that the surviving spouse can lose the election right in relation to a will only if the statutory notice is first served upon her, are erroneous. Plaintiffs offer *Howard, supra,* 76 Iowa at 231, 41 N.W. 45 (1888) in support of such a contention, but that decision preceded the pivotal post-1897 development of the election statutes and the accompanying caselaw. While a colorable argument might be made that notice had to be served before the election right was lost under the 1873 Code, the Iowa Supreme Court has consistently held that conduct without notice can constitute a binding election under any of the Codes after 1897. *Albright v. Albright,* 153 Iowa 397, 407, 133 N.W. 737 (1911), which plaintiffs further cite in support of their mandatory notice contention, fails to address the pending issue, for the Supreme Court stated therein that whether conduct without notice could operate as an election was a question not presented. And, in final support of this argument, plaintiffs quote from *Sefcik, supra,* 241 Iowa at page 579, 41 N.W.2d at page 714, to the effect that "it was only after service of notice to elect upon the survivor that his *silence* resulted in a conclusive presumption of an election to accept the provisions of the will in lieu of dower." Because no notice was served upon Edna Fryer, the passage has no relevance to the instant action. Having determined that the precise issue is whether the conduct of Edna Fryer, who received no formal notice of her election rights, was such as to manifest an election to take under her husband's will, the Court proceeds to determine the sufficiency of the record for summary judgment.

It therefore becomes essentially a fact question to determine whether or

not the acts, conduct, and declarations of the widow were sufficient to satisfy the court of the fact of such an election. *In re Estate of Heuberger,* 191 Iowa 59, 61, 181 N.W. 773 (1921).

## III.

Defendant offers documentary evidence of the three actions which allegedly establish that Edna Fryer elected to take under her husband's will: (1) a federal estate tax return, signed by the co-executor son and indicating that the surviving spouse would elect to take under the will; (2) a 1972 joint income tax return, filed by the surviving spouse and reporting all income from securities listed on the estate tax return; (3) a petition to sell the deceased's former residence, signed by plaintiff co-executors and representing the surviving spouse to have a "life estate" in said real estate.

In determining whether the conduct of a surviving spouse, who receives no written notice, has been sufficient to manifest an election under prior law, the Iowa Supreme Court has applied the two-pronged test of *Schubert v. Barnholdt,* 177 Iowa 232, 238, 158 N.W. 662, 664 (1916):

> That to constitute an election two things appear to be necessary: (1) That the widow be aware of the extent of the estate, and that she is choosing between two inconsistent rights, and (2) that, with such knowledge she intended to choose.

The most recent decisions indicate that acts manifesting election by the unnotified surviving spouse must be taken with "full knowledge of her rights," acts "clearly indicating an intention to elect." *Mensinger, supra,* 240 Iowa at 76, 78, 35 N.W.2d at 464.

The parties have stipulated that in the United States Estate Tax return filed during November 1972, questions as to whether the surviving spouse had "the right to declare an election" and had "elected to take under the will" were answered "yes." Defendant's argument suggests that the surviving spouse's son, who possessed power of attorney, was acting as her agent, and that the knowledge and intent reflected in his signature below the answers could be imputed to her. Such an argument is not entirely without foundation, for some courts have held that "the right of election to take against the will, is a personal right in the widow, but the election may be made by a power of attorney." *Avery v. Bender,* 119 Vt. 313, 126 A.2d 99, 111 (1956); *see* 83 A.L.R.2d 1077. These courts, however, confronted situations where the agent with power of attorney actually filed a written election rather than an estate tax form. Estate Tax Form 706 was intended to be filled out by the executors of the estate. Hence, the son was acting in his role as executor in completing the form, and not as agent for the surviving spouse. In this executor capacity, he was performing duties as an agent of the State and an officer of the court, only owing ultimate fiduciary duties to the surviving spouse as beneficiary. Loyalty and good faith, as opposed to legal obligation, form the basis of any such fiduciary relationship.

> There are many relationships in which one acts for the benefit of another which are to be distinguished from 'agency' by the fact there is no control by the beneficiary. Thus executors, guardians, and receivers, although required to act wholly for the benefit of those on whose account the relationship has been established, are not subject to their directions. Restatement of Agency § 14(c), Comment (1935), quoted in *United States v. Griswold,* 124 F.2d 599, 601 (1st Cir. 1941).

This Court has no evidence that the surviving spouse's son was acting in accordance with her desires, and any knowledge or intent that he may have possessed certainly cannot be conclusively imputed to the surviving spouse. In fact, since Attorney Lee Watts prepared this estate tax form, there is no evidence

other than their signatures that the co-executors know of its contents. While the estate tax form may then have some probative value as to the issue of conduct manifesting election, the Court cannot view it, for purposes of a summary judgment motion, as "clearly indicating an intention to elect."

In reference to the joint income tax return filed for Manford and Edna Fryer on January 3, 1973, the defendant does not dispute the surviving spouse's right to file such return in the year of decedent's death; but, noting that she apparently received all the dividends paid from securities that were listed on the initial estate tax return, the government argues that this report indicated that the surviving spouse was accepting the devised life estate in her husband's property rather than a dower interest. Presented with no evidence other than the tax form itself, the Court finds an analogy between this situation and those cases in which the surviving spouse received rents accruing on land of which the other spouse died seised:

> We have held several times that the mere receipt of rents by a widow under such circumstances will not operate to estop her from claiming her statutory share of her husband's estate (*Byerly v. Sherman* [1905] 126 Iowa, 447, 102 N.W. 157; *Jones v. Jones* [1908] 137 Iowa, 382, 114 N.W. 1066; *Thorpe v. Lyones* [1913] 160 Iowa, 415, 142 N.W. 82) and we find nothing in the record to take the case out of the rule so established. Moreover, the rent in this case was for but a single year, it was collected by the executor as an asset of the estate, and by him paid over to the widow, and, so far as appears, the payment and receipt were made without any claim or demand thereof on her part. *Pring v. Swarm*, 176 Iowa 153, 163, 157 N.W. 734, 737 (1916).

The Court again does not deny that a return signed with the surviving spouse's mark is probative of her knowledge and intent to elect the will's provisions. Nevertheless, in view of the precedent going to one payment without evidence of claim or demand by the surviving spouse, the evidence is considerably undercut. *See Canavan v. McNutty*, 328 Ill. 388, 159 N.E. 782, 786 (1927).

Defendant also brings the Court's attention to the petition of July 2, 1973, which sought authorization to sell decedent's former residence and represented the surviving spouse as possessing a "life estate" rather than a dower interest in it. The parties stipulate that this representation of a life estate was erroneous, and that said real estate was in fact held by Manford and Edna Fryer in joint tenancy. The submitted stipulation further establishes that the petition in question was filed after the filing of the Written Election of Surviving Spouse In Relation To Will that was signed by Leonard Fryer but before the filing of the Written Election signed by Edna Fryer.[2]

From the fact that the residence was actually a joint tenancy interest, plaintiffs argue that the surviving spouse was obviously not aware of the "extent of the estate" and that such a mistake obviates the requisite intent to take under the will. But, even if the surviving spouse had known of her joint interest at the time of the authorization petition, the Court, considering plaintiffs apparently thought either a joint or life interest would entitle the estate to a marital deduction, finds no evidence that her choice as to the will would have been different. The Court also questions whether a mistake with respect to the "type" of property is any different from a mistake as to the "value" of property, a mistake of fact that In re Estate of Mann, 201 Iowa 878, 883, 208 N.W. 310

---

2. While commenting on the authorization petition, the Court proceeds with the understanding that this petition will not be considered for purposes of the conduct issue if the first Written Election is subsequently established as valid.

(1926) held was not essential to a full knowledge of "the extent of the estate."

Yet, while defendant correctly argues that the authorization petition may be probative of an election under the will, the underlying evidence as to knowledge of and communications between the co-executors and the surviving spouse is again absent. *Phillips v. Phillips*, 204 Iowa 78, 214 N.W. 548 (1927), which considered a loan application that represented the surviving spouse as possessing a life estate in the land to be mortgaged, is easily distinguished. In *Phillips*, perhaps as in this case, the surviving spouse knew of the application but neither prepared it nor knew of its allegations; however, in *Phillips* the Iowa Supreme Court had testimony from the surviving spouse that disclosed full awareness as to the extent of her husband's estate and her election rights. The surviving spouse was held to an election by conduct because of the evidence in addition to the "life estate" representation:

> It appears without dispute that, after the death of the testator, the [surviving spouse] took possession of all the personal property on the farm and of the whole 160 acres and used all of the property as her own. This was all of the property of the estate. She rented the land to one of her sons and received all of the rent, not accounting to either of the children for any part of it. This arrangement continued from 1922 up to the commencement of the present proceeding, in 1925. We understand that none of the personal

property was set off to her as exempt. She traded a car left by the testator for a new one, and sold one-half of the personal property to one of her sons. *Phillips, supra*, at 80, 214 N.W. at 549.

The *Phillips* case is no different from other cases in which the issue of conduct manifesting election has come before the Iowa Supreme Court: any one piece of evidence is in itself generally not sufficient and the strength of the case is dependent upon the cumulative effect of such evidence. Unlike the instant action, the evidence in these cases was not presented solely through documents but was offered in the form of testimony from the surviving spouse and others as to her knowledge of, satisfaction with and ability to understand the will as well as her acts, omissions, and mode of dealing with the property under the will.[3]

▮▮▮ The Court, therefore, concludes that the evidence before it is insufficient to warrant summary judgment for either party. A motion pursuant to F.R.Civ.P. 56 is subject to the strict standard whereby the movant cannot be upheld unless the record reflects beyond any real doubt the lack of a genuine issue of material fact. *Charmoll Fashions, Inc. v. Texora International Corp.*, 59 F.R.D. 22 (D.Minn.1973). Defendant, as movant, simply fails to produce evidence sufficient to expel doubts as to whether the surviving spouse had "full knowledge of her rights" or whether she took actions "clearly indicating intention to elect." But, if such doubts

---

3. The Court will not presently rule on plaintiffs' claim that two separate and valid written elections to take against the will were filed with the District Court of Montgomery County. Prior Iowa caselaw upholds written revocation of an earlier election if filed within the statutory period for election, and courts are also generally liberal in permitting late election when neither the statutory period has expired nor any party has suffered detrimental reliance. *Nick v. Nick*, 195 Iowa 351, 355, 189 N.W. 829 (1922); *Mensinger, supra*, 240 Iowa at 79, 35 N.W. 2d 461. Since Section 633.237 fixes no time

within which an election must be made where notice to elect is not given, whether election has occurred by conduct becomes critical to a case such as that before the Court. If no election by conduct is established, then the issue of revocation becomes moot and the validity of the filed written election can alone be considered; if established, then the Court will also have to determine what constitutes a revocation of election and whether any revocation can be valid when beyond the six-month statutory period.

were resolved in defendant's favor, as they must in evaluating plaintiffs' motion for summary judgment, then plaintiffs would lose on the grounds of election by conduct. Movants thus have failed to meet their respective burdens, and summary judgment is denied as to both parties. *See Dulansky v. Iowa-Illinois Gas and Electric Co.*, 191 F.2d 881, 885 (8th Cir. 1951).

Accordingly, it is ordered that defendant's motion for summary judgment is denied.

It is further ordered that plaintiffs' cross motion for summary judgment is also denied.