WILLIAM SCHUBERT et al., Appellants, v. CLAUS BARNHOLDT, Executor, et al., Appellees.

**MARRIAGE:** Validity—Presumption—Evidence to Overthrow. The
1 presumption of validity of a marriage, especially when confirmed by 30 years of cohabitation as husband and wife, will not be lightly overthrown. So held where an interested witness testified that, at a time and place not stated, he had heard the woman say that she had a husband in a foreign country.

**APPEAL AND ERROR:** Abstracts—Conclusiveness. Assertions
2 *in an argument* that the abstract is incorrect will be disregarded.

**WILLS:** Right of Surviving Spouse—Election between Devise and
3 Dower—Evidence. Evidence reviewed, and held sufficient to show that a surviving wife, who died within 24 hours after the death of her husband, had elected to take under the husband's will.

**HUSBAND AND WIFE:** Post-Nuptial Contracts—Materiality as
4 Evidence—Dower and Devise—Election. A post-nuptial contract between husband and wife, wherein they seek to fix the future right of the wife in and to the husband's property, while, in its larger sense, a nullity, yet may constitute an important item of evidence on the question whether the wife, after the death of the husband, elected to take her distributive share or under the will.

**WITNESSES:** Competency—Transaction with Deceased. A witness,
5 though interested, is competent to testify to a transaction with a deceased person in which the witness took no part.

**EVIDENCE:** Presumption—Knowledge of Law—Election between
6 Dower and Devise. On the question whether a surviving wife had elected to take under the will of her husband or to take her distributive share, it will be presumed, in the absence of contrary

evidence, that she knew that under the law she had a right to choose between the two rights.

**WILLS: Right of Surviving Spouse—Devise and Dower—Election—**
**7   Requisites.** To constitute an election by a surviving spouse between a devise and the distributive share, it must appear: (a) that the survivor was aware of the extent of the estate; (b) that he or she was choosing between inconsistent rights, and (c) that, with such knowledge, she *intended* to choose between the two. Evidence held sufficient to justify the presumption that a wife knew the extent of an estate.

*Appeal from Cass District Court.*—E. B. WOODRUFF, Judge.

THURSDAY, JUNE 29, 1916.

THE opinion states the case. The plaintiff appeals.— *Affirmed.*

*C. B. Clovis* and *T. C. Whitmore,* for appellants.

*George Cosson,* for intervener, appellant.

*H. M. Boorman, Thomas B. Swan* and *Willard & Willard,* for appellees.

LADD, J.—Henry Barnholdt died testate May 29, 1910, leaving him surviving a wife, Elizabeth Barnholdt, and six children, and four children of a deceased son. About 24 hours thereafter, the widow died intestate, leaving as her heirs a brother, Wm. Schubert, and another brother, and the children of a deceased sister. The will of the decedent was admitted to probate, and, after directing the payment of debts and funeral expenses, provided that his personal and real property be held in trust by the executor, ''and the income therefrom devoted to the use and benefit of my beloved wife, Elizabeth Barnholdt, her surviving me, during her life.'' Upon her death, the property was to pass to his heirs, in different amounts. Claus Barnholdt, nominated in the will, was appointed executor. John Barnholdt was appointed administrator of the estate of the widow, but, finding no property,

and no claims being filed, was discharged. The heirs of the widow ask that the executor of the estate of Henry Barnholdt, together with the several legatees under the will, account for the dower interest or distributive share of the widow in the estate of her husband. David Hope, appointed administrator *de bonis non* of the estate of the widow, filed a petition of intervention, making substantially the same demand of the defendants. But two issues are presented here: (1) Whether Elizabeth Barnholdt was ever the wife of decedent, and (2) whether she elected to take under the will.

I. Every marriage is presumed to be valid, but the strength of that presumption depends on the circumstances of each particular case. *In re Estate of Colton*, 129 Iowa 542; *Tuttle v. Raish*, 116 Iowa 331. Henry Barn-

1. MARRIAGE: validity: presumption: evidence to overthrow.

holdt married Elizabeth in 1877, and for over 30 years they lived together as husband and wife, and until his death. Though her brother left Germany 8 or 9 years before she did, he had heard nothing of a previous matrimonial venture. But Claus, a son of the testator's by a former marriage, testified to having heard a conversation between his stepmother and his sister, somewhere, at some time not stated, in which the former confided to the latter that she had a husband in the old country, by whom she had had one child, which husband was still living and not divorced, and that she left him because he treated her meanly. When on the stand again, this witness is reported to have testified that she said her first husband was divorced.

This is said to have been due to an error by the reporter in omitting "not" before "divorced." If so, the record should have been corrected by the trial court. We take the record as certified. But, treating it as coun-

2. APPEAL AND ERROR: abstracts: conclusiveness.

sel say it should have been, we do not regard the evidence as sufficient to overthrow the strong inference in favor of the validity of the marriage. Evidence of the class adduced is always of doubtful value, as

the witness may not have heard accurately, and, so remember-
ing, may not have repeated without change of language such
as to modify the meaning intended by the declarant.  Besides,
the witness was interested, and was aware that there could
be no contradiction by the deceased, and probably there would
be none by the other interested person present, whatever the
fact might be.  The witness might not have understood, or
remembered or repeated correctly.  We are not ready to
denounce the relation of these parents on such testimony, after
its long enjoyment and general recognition, even though rein-
forced by the story of another witness that somewhere, at
some time, she had heard deceased say to the witness that she
lost a child about three years old in the old country.  The
aspersions against the dead are not sustained by the evidence,
and we find that Elizabeth was widow of the testator.

II.  Did Elizabeth Barnholdt elect to take under the will
of her deceased husband?  On the day the will was signed,
the testator and his wife executed a deed conveying the home-

3. WILLS: right of
surviving
spouse: election
between devise
and dower: evi-
dence.

stead to his son, Henry, he giving his note for
the purchase money with mortgage securing
same; but before she would sign the deed, she
exacted that she be given by his will a life
estate in all his remaining property, and that
thereafter it should pass to his children.  Thereafter, and
before his death, she expressed satisfaction with the will.

What happened before his death cannot be construed to
be an election to take under the will, for the reason that the
husband and wife could not negotiate contracts between them-

4. HUSBAND AND
WIFE: post-nup-
tial contracts:
materiality as
evidence: dower
and devise:
election.

selves concerning the right or interest of one
in the other's property, and the opportunity
to elect did not then exist.  *In re Kennedy's
Estate,* 154 Iowa 460; *Berry v. Donald,* 168
Iowa 744.  But the circumstance that she was
content with the terms of the will when made, tended to show
her subsequent attitude of mind toward it.  *Cook v. Lawson*
(Kan.), 66 Pac. 1028.  Subsequently, the testator took his

own life, and she died within a day afterwards. At that time, she was 81 years of age, had not walked for several years, used a wheeled chair, and, as her physician says, was suffering from la grippe complicated with endocarditis—"was having a little trouble with hysterical paralysis. . . . She died of la grippe, complicated with endocarditis, and of course la grippe poisons the vessels and acts upon the nervous system, and in this way they have a good deal of pain and misery." She was much shocked by the death of her husband, but was of sound mind.

Testimony of several witnesses, bearing on the issue of election, was adduced. Henry Barnholdt testified that, on the evening of his father's death, while he and his brother Claus were carrying their stepmother from one room to another, Claus asked her if she was satisfied with the will, to which she replied that she was, and that she added, "Oh, Claus, father has provided that will for me and I want you to take care of me the rest of my life," and that Claus should get her property for that.

Tena Weiss aided in her care until midnight, after the death of the testator, and from the following morning until her death. Being asked, "What, if anything, did she say to you about the will and her provision, the provision that had been put in the will, whether she had accepted it or not?" she answered:

"She accepted it.  Q. Just tell us as near as you can what was said about the will.  A. Well, that had been fixed and she was glad of it, and it had been fixed to her satisfaction. Q. What, if anything, did she say about that she was willing to do under the will, that she expected under the will?  A. She took under the will.  Q. What, if anything, did she say with reference to what should become of the property after she died?  A. Her desire was that it should fall back onto Mr. Barnholdt's children."

On cross-examination, it developed that the witness' half-

sister was the wife of testator's brother; and she explained that Elizabeth was in more or less pain all the time, in her head and elsewhere, and seemed to have notions.

"She groaned and complained of pain in her limbs, and her breathing bothered her a great deal. . . . She was not talking much about the business of the farm or anything else," but said that "she was ready to die, and her husband had died before she did, and that she was well provided for . . . She cried and worried a great deal about her husband's death."

Another witness, Mrs. Lena Taylor, a daughter of testator's, swore that she was present when Claus and Henry carried their stepmother into the room where her father's corpse lay, and heard her say to Claus, when she was carried out, "Father has died now and I want you and Emma to take care of me while I live, and father has provided all his estate for me during my life and after I am dead it shall go to father's children . . . that she said she would take under the will." The witness explained that she had no part in the conversation; that it was directed to Claus; and, further, that she heard her mother say to Tena Weiss that she was willing to take under the will of father, "that after she was through with the property it ought to go back to father's children." Claus Barnholdt also testified that he heard a conversation between his stepmother and Henry, in which he had no part, and in which "she said she would take under the will."

The infirmities of this kind of evidence have already been alluded to. That so many witnesses should have exercised the discretion of not participating in the conversations is a little remarkable, especially in view of the effect

5. WITNESSES:
competency:
transaction
with deceased.

of such silence on their competency to testify. And yet what is related by them is in entire harmony with her wishes as expressed in her lifetime and conclusively proven. None of these witnesses were incompetent (*Hughes v. Silvers*, 169 Iowa 366; *Steen v.*

*Steen,* 169 Iowa 264), and the finding that deceased, after the death of testator, expressed her satisfaction with the terms of the will is well sustained by the evidence.

Though she was not shown to have been aware of her right to elect whether she would take under the will and a distributive share, she, like all others, is presumed to have known the law and to have expressed her satisfaction with the provision made for her in the will, with full knowledge of her right to choose. The present statute (Section 3270 of the Code of 1897) differs from Section 2452 of the Code of 1873, as was pointed out in *Arnold v. Livingston,* 157 Iowa 677, where we held that the widow might choose whether she would take under the will or receive her distributive share at any time after the death of her husband, and said, speaking through Gaynor, J.:

6. EVIDENCE: presumption: knowledge of law: election between dower and devise.

"The election determines the choice, and this choice may be shown by expressed words of election, and, as in this case, the actual taking of the thing bequeathed, or it may be shown in any other manner that clearly makes manifest that an election has been made."

The decision was followed in *Berry v. Donald,* 168 Iowa 744. To constitute an election in such cases, two things appear to be necessary: (1) that the widow be aware of the extent of the estate and that she is choosing between two inconsistent rights, and (2) that, with such knowledge, she intended to choose. As previously said, she is presumed to have known the law, and, as this was in no wise contradicted, she must have been qualified in this respect to choose. She was living, and from this, and the circumstance that she was ready to join in the conveyance, provided she were given a life estate in his remaining property, it is to be inferred that she was aware of its extent. It consisted of moneys and credits amounting to nearly $20,000, and, in view of her fully proven desire that all the property pass on descent

7. WILLS: right of surviving spouse: devise and dower: election: requisites.

to his heirs, she might have elected as appellees contend she did. See valuable note to *Owens v. Andrews* (N. M.), 49 L. R. A. (N. S.) 1072. What she said subsequent to testator's death, when considered in connection with her mental attitude as evidenced by what occurred at the execution of the will, as we think, clearly evidences her election to take under the will, and, as the trial court so found, its judgment is—*Affirmed.*

EVANS, C. J., GAYNOR and SALINGER, JJ., concur.