Mary A. Miksch et al., Appellees, v. Alexander Miksch et al., Appellants.

**PARTITION:** Proceedings and Relief—Payment of Incumbrances.
1  He who seeks to establish equitable rights in the premises sought to be partitioned, because of having assisted in the pay-

ment of incumbrances thereon, must establish such claim by reasonably definite testimony.

WILLS: Rights of Devisee—Surviving Spouse—Election Between Will and Dower. A surviving spouse was not estopped, under Section 2452, Code, 1873, from taking her distributive share *in addition* to a non-inconsistent life estate provided for her in the will of the deceased spouse, by the naked fact that for 36 years she retained and used the devised premises and the fruits and profits thereof. In other words, such acts, even when aided by some indefinite testimony tending to show that the survivor only intended to take a life estate, will not be held to constitute an *election by estoppel*, assuming such to be possible.

*Appeal from Washington District Court.*—JOHN F. TALBOTT, Judge.

THURSDAY, MARCH 15, 1917.

ACTION in equity for the partition of real estate. There was a decree as prayed, and defendants appeal.—*Affirmed.*

*Eicher & Livingston,* for appellants.

*C. A. Dewey,* for appellees.

WEAVER, J.—The parties are children and grandchildren of Joshua Miksch and Susan A. Miksch, his wife, both of whom are now deceased. Joshua Miksch died in 1879, seized of the land in controversy. He left a will, which has been duly probated, disposing of his estate in terms, the material part of which reads as follows:

"To my wife, Susan A., I bequeath all the property of which I may die possessed, both real and personal, or so much thereof as may remain after the full payment of all my just debts, to have and to hold during the period of her natural life. After the death of my wife, it is my will that the then remaining residue of the property herein bequeathed may be sold and the proceeds divided equally among all my children or their heirs. The executors of my will, to be hereinafter named, are hereby authorized to sell

any part or all of the property herein bequeathed whenever they together with my wife shall deem it best to do so, provided that all moneys thus arising shall be safely invested for the sole benefit of my wife."

Susan A. survived her husband, dying at a very advanced age in 1915. She left a will, executed in 1909, which has been admitted to probate. The material part of this instrument is as follows:

"I give, devise and bequeath to my two daughters, Mary A. Miksch and Ella C. Hanley, an undivided one third in fee of the real estate owned by my husband, Joshua Miksch, at the time of his death and now owned by me, described as the south half of the northwest quarter of Section 36, of Township 75 north, of Range 9 west, in Washington County, Iowa, being the home place upon which I now reside; and also an undivided one third in fee of all other real estate owned by my said husband during his lifetime and of which he died seized, part of the same being in the southwest quarter of the southeast quarter of Section 5, of Township 75, north, of Range 9, west. Also, I will and devise to my two daughters, Mary A. Miksch and Ella C. Hanley, all personal property of every kind and character which I may own at the time of my death. The intention of this will being to give, bequeath and devise to Mary A. Miksch and Ella C. Hanley my undivided one third of all real estate owned by my husband at the time of his death, and also all the personal property of every kind and character and of which I may be the owner at the time of my decease."

The parties plaintiff and defendant constitute all the legatees and devisees named in the two wills above referred to, or entitled in any manner to share in the land. The plaintiffs, basing their claim upon both wills, each assert ownership in 5/22 of the property. They further allege that their 8 brothers and sisters named as defendants are each

.entitled, under the will of their father, to 2/33 of said property, while the remaining 4/66 thereof belong to the 4 children of a deceased devisee—all of whom are impleaded as defendants.

The defendants deny that any part of the land passed to the plaintiffs by the will of their mother, who, they say, took no more than a life estate in the property left by Joshua Miksch, and claim that, upon his death, a remainder in fee vested at once in all his children in equal shares, and ripened into a full and perfect title in them on the death of the life tenant. In other words, it is conceded that all the parties have a share in the title to the property, but the dispute relates to the particular share or fraction to be awarded to each. The solution of the difficulty, as will readily be seen, depends upon what effect, if any, is to be given to the will of Susan A. Miksch.

It is conceded of record that, after the death of her husband, Mrs. Miksch continued to live upon the land, together with one or more of her adult children, during the remainder of her life; that no notice was ever served upon her to make an election between the benefits provided for her by her husband's will and her statutory share in the estate, nor did she ever make such election in open court or by instrument or writing made of record. The defendants plead, and offer some evidence in support of their assertion, that their mother made no claim to anything but a life estate in the property, but conceded the entire remainder to be in her children; that with such understanding some of the children remained at home for several years, assisting in paying off the debts of the estate, putting in their services without compensation; and that, because of such conduct on her part, she estopped herself to make a claim to a statutory share in the land, and that such estoppel is also effective to prevent the plaintiffs from acquiring any rights in the land under and by virtue of her will.

**1. PARTITION:** proceedings and relief: payment of incumbrances. I. Though much is said in argument by appellants on the theory that they or some of, them acquired equitable rights in the premises because of assistance in paying debts and claims against the estate of their father, an examination of the record reveals very slight foundation for such claim. The probate records disclose that the estate of Joshua Miksch was settled within a year after his death, upon the administrator's report showing that the personal assets of the estate liable for payment of debts amounted to but $50.70, and that this was expended in payment of expenses of the last sickness and burial of the deceased. The report also represents that there were no outstanding liabilities, and that the estate had been settled in full. Among the papers is a receipt for $77, purporting to have. been paid by H. J. Miksch (one of the appellants) ; but there is no bill or voucher showing whether the claim or amount so paid was chargeable to the estate. The exempt property, consisting of 2 horses, 2 colts, 3 cows, 1 calf, 10 sheep, 14 hogs and 6 pigs, was reported as having been set off to the widow. It appears to be conceded, however, that there was a mortgage incumbrance on the land, not to exceed $500, and the sons Lovine and Wesley say that there were $300 to $400 of other debts not noted in the probate proceedings. This indebtedness they claim to have paid off, but neither is able to specify the items or name the creditors receiving the money. Wesley was at this time a minor, and had no means except his earnings as a laborer, while Lovine was occupying and farming the land. It is also conceded that the personal property set aside to the widow as exempt was by her turned over to these sons and the proceeds thereof used in paying off the debts referred to, though it is said by Lovine that, after applying such property to the debts, there was still a deficiency of $300 to $400 which had to be cared for otherwise. We think, however, that it is reason-

ably to be inferred that the debts, the items and amount of which no one is able to state, were paid from the proceeds of the exempt property and the income from the farm, and that neither of the sons acquired thereby any rights in or to the land other than such as are provided in their father's will.

II.    Assuming, for the purposes of the

2. WILLS: rights of devisee: surviving spouse: election between will and dower.

case, that the mother could, by her conduct with reference to the land, estop herself from claiming anything more than a life estate therein, we have next to inquire whether there is shown in her conduct anything which makes it inequitable for her or her devisees to assert any greater or other right. We think this question must be answered in the negative. There is in the record the testimony of a railroad company's agent that, in the year 1901, he applied to the widow to obtain a right of way for his company across the land, and was told by her that he would have to see the children, as she had only a life estate in the property. None of the children were present or had any part in the interview. Some of the appellants also testify that their mother made statements to them to the same general effect: that she was claiming only a life estate in the property, but wished it might be so arranged that at her death the plaintiffs, who had lived with her and cared for her, should receive something more than their equal share of the property in compensation or reward for their services to her. Aside from these more or less vague and general statements, the plea of estoppel rests upon the simple fact that she did continue her residence in the old home with one or more of the adult members of the family during the remainder of her life, and in some fashion enjoyed the use of the farm. What sort of income or what amount of rents she received from her sons or other tenants operating the farm is nowhere shown or suggested. So far as we can see from the

showing made, the appellants were not deceived or misled by their mother to their material injury in any respect. It may be that, if they had had a clearer understanding of their legal rights in the premises, they would have acted differently in some respects. Had they supposed there was any inconsistency between the benefits conferred upon the mother by the will and the claim of a statutory share by her, it was open to them at any time to test the matter by serving her with notice to make an election. But until such notice was served, the mere retention and use of the premises by the widow did not operate as an election by estoppel. *Byerly v. Sherman,* 126 Iowa 447, 452; *Irish v. Steeves,* 154 Iowa 286, 292; *Jones v. Jones,* 137 Iowa 382, 386; *Jamison v. Auxier,* 145 Iowa 654, 656; *Pring v. Swarm,* 176 Iowa 153; *Thorpe v. Lyones,* 160 Iowa 415.

Where, under the Code of 1873, the devise to the widow is not inconsistent with her claim of a statutory share, if the doctrine of estoppel is ever to be applied in such cases, it certainly should require a very clear and conclusive showing of some deception or misleading act upon her part to the injury of others, to impose upon her the loss of her right either under the will or under the statute.

Reading the will of Joshua Miksch in the light of the authorities, we think that, under the statute as it stood at the time the will became effective, the widow could assert her statutory interest in her husband's estate without surrendering or rejecting the benefits of the devise in her favor. In addition to the cases already cited, see *Watson v. Watson,* 98 Iowa 132; *Kierulff v. Harlan,* 150 Iowa 671; *In re Estate of Stevens,* 163 Iowa 364, 373.

There is nothing in *Mohn v. Mohn,* 148 Iowa 288, *Parker v. Parker,* 155 Iowa 65, *Koep v. Koep,* 146 Iowa 179, 182, or *Arnold v. Livingston,* 157 Iowa 677, 684, relied on by appellants, inconsistent with the views expressed in this opinion.

Those views have the support of a very definite and unequivocal statute, as well as of a long line of well-considered precedents, and unless we are to depart therefrom, the decree of the trial court is entitled to an approval. It is therefore—*Affirmed.*

GAYNOR, C. J., LADD, EVANS and PRESTON, JJ., concur.