CHARLES A. PABBELDT, Appellant, v. PAULINE SCHROEDER et al.,
Appellees.

WILLS: Right of Devisee—Election—Devise (?) or Dower (?) Long
acquiescence by a surviving spouse in the testamentary provisions
made for her may constitute an irrevocable election to waive her
statutory distributive share.

Headnote 1:  40 Cyc. p. 1982.

Headnote 1:  49 L. R. A. (N. S.) 1074; 28 R. C. L. 332.

*Appeal from Hamilton District Court.*—SHERWOOD A. CLOCK,
Judge.

NOVEMBER 23, 1926.

This is an action in partition. The plaintiff alleged in his
petition that, as the sole devisee of the will of his mother, Jo-
hanna Pabbeldt, he became seized of an undivided one-third
interest in a 280-acre tract of land in Hamilton County. The
defendants are the daughters of William and Johanna Pabbeldt,
with their spouses, and the children of Bertha Gayer, a deceased
daughter, and the devisees of their father's will. The court
found that plaintiff had no interest in the land, and quieted title
thereto in the defendants, upon their cross-petition. The plain-
tiff appeals.—*Affirmed.*

*C. E. Gilchrist* and *Lee & Garfield,* for appellant.

*Frank J. Lund* and *Henderson & Jones,* for appellees.

STEVENS, J.—William and Johanna Pabbeldt, husband and
wife, died testate in Hamilton County,—the former in April,
1918, and the latter on October 14, 1923. At the time of his
death, William Pabbeldt was the owner of the land in question
and of personal property, mostly moneys and credits, of the
value of approximately $21,000. By his will, he gave appellant
the sum of $5.00, his daughter Minnie Klein the sum of $3,000,
and to his wife, Johanna Pabbeldt, he gave the following:

"All income and profit derived from any farm land I may own at time of my decease, and my said wife Johanna Pabbeldt shall have possession and control of all my real estate and the possession, use and profits of all my personal property, moneys and credits as her own during her lifetime and which shall be in lieu of her homestead rights, dower, and any and all other rights she may have in my property as provided for under the laws of the state of Iowa."

The remainder he gave to his daughters Mary Haupt, Bertha Gayer, Pauline Schroeder, and Linda Geitz, share and share alike.

The will of Johanna Pabbeldt gave her household furniture, furnishings, and all personal belongings to her four surviving daughters, and all of the rest and residue of her property, real and personal, to appellant. The property of Johanna Pabbeldt consisted of her residence in Williams and about $13,000 in certificates of deposit of the State Bank of Williams.

The case turns upon whether Johanna Pabbeldt consented to take under her husband's will. There is little conflict in the evidence, and there appears to have been no friction of any kind at any time between the widow, her husband's executor, and the beneficiaries of his will. There is no claim of fraud or bad faith upon the part of anyone connected with the estate or its administration. At the time of her husband's death, Johanna Pabbeldt was 77 years of age, apparently in good health, and in the full possession of her mental faculties. John Schroeder, her son-in-law, was appointed executor of the estate, the choice of which the will gave to the four daughters above named. Shortly after the death of William Pabbeldt, his widow and Schroeder consulted an attorney at Webster City, who advised her of her statutory right either to take one third in value of all the property of her husband or to accept the provisions of the will. No election to consent to the provisions of the will was ever filed by Mrs. Pabbeldt or made in open court. Her election, if any is shown, was by her voluntary acts and conduct.

Two leases of the farm were executed during the time intervening between the deaths of William and Johanna Pabbeldt. Both of these leases were prepared and signed in Mrs. Pabbeldt's presence, the first one for her by Mrs. Schroeder, and the notes given for the second lease were made payable to her. Mrs.

Pabbeldt received all of the income from the estate, which income exceeded $13,000. Of this amount $2,604.34, which represented a portion of the rent for the farm for 1921 and all of the rent for 1922 and an item of interest, was paid directly to Mrs. Pabbeldt. The rest of the income, amounting to $9,961.79, was either paid at the State Bank of Williams or to the executor, credited to his account, and subsequently paid by him to Mrs. Pabbeldt in various amounts and on various dates. The first substantial payment made to her by the executor was $4,628.10, on June 19, 1920. William Carstens, who was the tenant of William Pabbeldt at the time of his death, testified that, shortly after that event, he applied to Mrs. Pabbeldt for a new lease for a term commencing March 1, 1919. He testified that the terms of the lease subsequently signed were agreed upon between himself and Mrs. Pabbeldt, and no one else. The annual rental prior to the execution of the new lease, which was on July 30, 1918, had been $1,800. The rental under the new lease was $2,500. Both Carstens and A. H. Graffunder, a neighbor and friend of William and Johanna Pabbeldt's, testified that the latter visited the farm shortly after her husband died; that she talked with the tenant, complained to Graffunder because his father-in-law was seeking a reduction in the rent, and talked about leasing the place. A. D. Rankin, who leased the farm on August 26, 1922, for two years, commencing March 1, 1923, testified that his conversations were all had with Mrs. Pabbeldt; that the terms of the lease were agreed upon with her; and that she was present in the bank when it was executed. The notes executed by Rankin for the rent were made payable to Mrs. Pabbeldt. The income derived from the land and from the personal property was deposited in the bank at Williams, and certificates of deposit taken therefor in Mrs. Pabbeldt's name. Before her death, Mrs. Pabbeldt, in the presence of several members of her family and Mr. Graffunder, gave one certificate for $1,000 to Minnie Klein, and the remaining certificates, aggregating approximately $12,000, to appellant. One of the witnesses present testified that, when the certificates were handed to him, his mother said "to take good care of them, as that would be all he would get." The evidence tends to show that she stated on different occasions that the land could not be sold during her lifetime, as she had the income therefrom.

E. I. Johnson, who was an officer of the bank at Williams, testified that Mrs. Pabbeldt frequently insisted that Carstens sell his crop and pay the rent before he moved off the place; that she was very active in business, and appeared to know what she wanted to do. She handled the proceeds of the farm in her own way, allowing a discount to a tenant of $500 on one year's rent, and donating $700 to a daughter. That she understood the terms of the will is quite clearly indicated by a remark she made on the day of the funeral, as shown by the testimony of her daughter, who testified that she heard her mother say in German "that it was hard, but that she was well provided for, as she would have the income from the farm." Nothing was done, so long as Mrs. Pabbeldt lived, to partition or sell the land, all of the children, including appellant, apparently acquiescing fully in the will of their father. Appellant must also have understood the will and have believed that his mother consented to the terms thereof. The executor of Mrs. Pabbeldt's estate testified that he talked with appellant, and that the only property of his mother's estate to which he referred was a house in Williams. The executor of William Pabbeldt's estate testified that he talked with appellant shortly after the death of his mother; that appellant then stated that he understood that her estate was liable for the taxes, and that he would pay the funeral expenses; and that, in reply to the statement of the witness that there was some money belonging to the estate which some of the heirs were wanting and would like to have, said that some of them "sure needed it." He made no protest, nor did he make claim to any interest therein. Following this conversation, the executor distributed something like $22,000 of the personal estate to the persons entitled thereto under the will.

On the other hand, Mrs. Pabbeldt, on a few occasions, expressed dissatisfaction with the will, and said that appellant had not been fairly treated by his father. It is also conceded that the rent and other income derived from the estate, except as stated above, were placed to the credit of the executor, and later turned over to Mrs. Pabbeldt, and certificates of deposit issued therefor. Her name was signed to most of the checks drawn on her account by the executor, who paid the taxes and apparently looked after the business generally. In May, 1923, the attorney then employed by the executor went with him and

Johnson, cashier of the State Bank of Williams, to Mrs. Pab-
beldt's home, and requested her to sign a written consent to the
terms of the will.   This she declined to do, saying that she had
read in a German paper that she was entitled to one third of the
property.   She either requested, or the attorney volunteered to
send her, a copy of the will, which he subsequently did.   On this
occasion, she signed several receipts for money received by her
as rent and interest from the estate.   The attorney advised her
that she could not have both a third and the income, and that, if
she took the former, she would have to return what she had re-
ceived.   She stated that she desired to see about the matter, or to
consult a lawyer, and that she would not then release the income
that had been paid her.

It is also urged by appellant that his mother was of German
birth, that she could neither read nor clearly understand the
English language, and that she did not know what her statutory
rights were.   The evidence shows that she read English badly,
and that she spoke the language brokenly.   Nevertheless, it seems
to us that her intention to accept the provisions of the will is
clearly established by the weight of the evidence.   The receipt by
her of the income from the property was inconsistent with any
other purpose or intention on her part.   She not only received,
but she disposed of by gift or by the terms of her will, all of the
income from the estate to Mrs. Klein and appellant.   That she
understood the terms of the will is evidenced by the remark made
on the day of her husband's funeral.   The participation of the
executor in the management of the estate, the making of leases,
the drawing of checks in Mrs. Pabbeldt's name, the payment of
taxes upon the land, and other acts done by him, are perfectly
consistent with the conclusion announced.   It is not at all
strange that she should show the confidence indicated in her
son-in-law, who appears to have dealt in perfect good faith with
her.   At her age, she would quite naturally rely upon someone to
help her.   As stated above, there appears to have been perfect
harmony among all of the interested parties.   So far as the
record discloses, every dollar paid to the executor or credited to
his account was accounted for, and paid to Mrs. Pabbeldt.   The
evidence of an election to take under the will is, it seems to us,
quite conclusive, unless the further contention of counsel that no
election was made prior to July 4, 1919, when Chapter 192, Acts

of the Thirty-eighth General Assembly (Section 12007 of the Code of 1924), went into effect, and that, under the provisions of this act, she could not elect in the manner shown, be sustained.

·As we view the facts, it is unnecessary in this case to construe the enactment referred to. The intention of Mrs. Pabbeldt to consent to the terms of the will is clearly manifested by the remark made on the day of her husband's funeral, and by her acts and conduct in leasing the farm for a term of two years commencing March 1, 1919, all of which was prior to the enactment of Chapter 192. The evidence as to subsequent acts and transactions fully corroborates this conclusion. It is true that she received but small sums prior to July 4, 1919, but this is only a circumstance throwing light on her intention and the understanding of the parties, and is by no means conclusive. She had in 1918 visited the farm, leased it to Carstens, and declared that she was entitled to and would receive the income therefrom. Whatever may be the right of the surviving widow to elect otherwise than by the voluntary filing of a writing to that effect in the office of the clerk of the district court, under the present statute, there is no question as to her right to have consented to the provisions of the will in the manner indicated by the testimony in this case prior to July 4, 1919. This we hold she did.

We have made no reference to many facts and circumstances of minor character tending to sustain the finding of the trial court. The reason assigned by the father for the small bequest to appellant was that he had previously received large sums of money as advancements. No doubt the mother felt that appellant should have been forgiven these advances, and that he should share in the estate with the daughters. She did all she could, after having received the income from the estate, to favor appellant. The daughters were present when the certificates were turned over to him, and made no protest, and make none now. Perhaps the result is substantially favorable to them, and, if so, this may account for their attitude. So long as the mother lived, the provisions of the will were carried out according to their terms. Mrs. Pabbeldt took no steps, after the visit of the attorney and the executor to her home, to indicate an intention contrary to that shown by her previous acts and conduct.

The decree of the court below is, accordingly, affirmed.—*Affirmed.*

DE GRAFF, C. J., and FAVILLE and VERMILION, JJ., concur.