PEOPLE'S SAVINGS BANK, Appellee, v. MICHAEL McCARTHY et al., Appellants.

JANUARY 17, 1928.

REHEARING DENIED MAY 18, 1928.

*Preston & Dillinger* and *Tinley & Tinley,* for appellants.

*Turner & Turner,* for appellee.

ALBERT, J.—To a fair understanding of the questions involved in this case a history of the McCarthy family and their affairs is necessary. We glean from the record the following: Dennis McCarthy and Catherine McCarthy were husband and wife. They were the parents of seven children, all of whom were of age, and parties to this action. Dennis McCarthy was the  owner of 320 acres of land in Pottawattamie County, Iowa, free from indebtedness at the time of his death, which occurred on the 26th day of January, 1915. He died intestate. He was also the possessor of certain live stock, crops, and farm machinery, etc., the amount of which is in dispute in the case. After his death, his surviving spouse, Catherine, two daughters, Mary and Margaret, and a son, Michael, continued to live on the farm and to conduct the same. In the later years of Dennis's life, he was unable to attend to business, and his affairs in a general way were looked after by his sons, Michael and Thomas. Thomas was married in 1912, and left the home place.

At the time of the death of Dennis, no administration was taken on his estate, but there was an outstanding indebtedness of $3,600 to the Citizens Savings Bank. About 18 months after his death, at the request of this bank, administration was taken out, and defendant Michael McCarthy was appointed administrator. This indebtedness was paid, the administration closed, and the administrator discharged.

After the death of Dennis, the home farm was continued in operation, under the supervision of Michael, as it had been prior to the death of Dennis. The bank account of these parties was carried with plaintiff, the People's Savings Bank. Prior to the death of Dennis, it was carried in the name of McCarthy Brothers. After Thomas moved away, it was changed to the name of the defendant Michael McCarthy. All receipts from the sale of products of the farm were credited to this account; and while the account was run in the name of Michael McCarthy, checks drawn by Mary and Margaret in the name of Michael McCarthy were always honored and paid by the bank. In other words,

while the account was in the name of Michael McCarthy, it was a common fund, upon which all of the members of the family drew, and it was so known and treated by plaintiff. Margaret and Mary were never married. It would seem that the general situation was that Michael, Mary, and Margaret all participated in the working of the farm. No partition was ever made of the real estate or the personal property.

In 1919 and 1920, the male members of the family became infected with the virus of speculation in the land boom then prevalent, which resulted in the placing of a mortgage on the home place to Annis & Rohling in the sum of $25,000, signed by all of the members of the family. Prior to the death of the father, the sons, Michael and Thomas, had acquired 160 acres of land adjoining the home farm on the north, and they placed thereon a mortgage of $16,000 to the Lincoln Joint Stock Bank, a part of which may have been to cover the original purchase price. Thomas and Michael borrowed largely from plaintiff bank, and their indebtedness to plaintiff was eventually covered by a second mortgage for $16,000 on the aforesaid 160 acres owned by Thomas and Michael. This mortgage was dated April 19, 1921. Further money was needed, and on October 1, 1921, a mortgage of $9,500 was put upon the home place for money borrowed from M. S. Wise. About this time, the bubble of speculation in land was punctured, and the plaintiff received from Michael a chattel mortgage for $8,000, covering all of the crops grown on the home place, the 160 acres owned by the two brothers, and another farm, known as the Catchall farm, owned by Michael, as additional security to the aforesaid second mortgage of $16,000. This mortgage also covered all of the personal property of every kind and description on the home place.

On June 13, 1922, the plaintiff bank made an additional loan of $12,000 to Thomas and Michael, which was secured by a third mortgage on the home place. This mortgage was signed by all of the members of the family. On December 9, 1922, the bank asked Michael for further collateral security, and on that date he gave to the bank a chattel mortgage for $10,000, in lieu of the $8,000 chattel mortgage heretofore referred to, covering all personal property on the home place and all of the crops raised on the three farms in which Michael was interested, for

the years 1922 and 1923. This last chattel mortgage is the one sued on in Count 1 of the petition.

On June 25, 1923, the bank made another loan to Michael of $4,000, taking as security therefor a mortgage on the home place, signed by all of the heirs.

On April 11, 1924, these parties needed money to pay interest, taxes, etc., and on that date Michael executed a mortgage to the bank for $4,000, covering the 1924 crop grown on the 160-acre farm, and the crops on the west 220 acres only of the home farm; and this last chattel mortgage is the one sued on by plaintiff in the second count of its petition.

On September 19, 1924, the bank started foreclosure of its real estate mortgages, the $16,000 on the north 160 acres, and the $12,000 and $4,000 mortgages on the home place. These suits all went to decree, and the $16,000 mortgage on the north 160 acres, belonging to Michael and Thomas, was sold on execution and bid in, leaving a deficiency of $5,000. Plaintiff is seeking to recover this deficiency in Count 1 of its petition out of the live stock and machinery described in the $10,000 collateral chattel mortgage.

On the filing of the petition in the case at bar, attachment was issued and levy made on all personal property on the home place and all crops raised thereon. Among other things levied upon was corn in the crib of the 1924 crop. At this point, the surviving spouse, Catherine, and the two daughters, Mary and Margaret, Thomas and John, and two other daughters, Mrs. George C. Goss and Mrs. Mike Wise, filed a petition of intervention, claiming, in substance, that the wife, Catherine, was the owner of one third of all of the property attached, and each of the children was entitled to 2/21 thereof; that the chattel mortgages sued on were not executed with their knowledge or consent; and that Michael had no authority to chattel-mortgage any of said property except his 2/21 interest therein. Certain other matters were pleaded by the interveners, which, if material, will be referred to later in the opinion.

Plaintiff, in reply to the petition of intervention, pleaded facts which it claimed amounted to an estoppel against the defendants other than Michael from claiming any interest in said personal property as against plaintiff. The details of this reply necessary for consideration will be given later.

First, as to the $10,000 chattel mortgage set out in Count 1 of the petition, it is the claim of the plaintiff that, in the mortgage foreclosure of the real estate of the two brothers under the $16,000 mortgage, there was a deficiency judgment of $5,000, and that this chattel mortgage was good as security for that deficiency, it being collateral or additional security for the debt represented by the $16,000 mortgage. The real battle ground at this point is whether the widow and the other children except Michael are estopped from claiming ownership in the personal property on the home farm which was covered by this chattel mortgage.

Briefly stated, it is the claim of plaintiff bank that the other heirs permitted Michael to so conduct himself in relation to this personal property that plaintiff believed and understood that he was the owner thereof, and, relying thereon, it took this chattel mortgage, not knowing that these interveners had or claimed any interest in said personal property. The evidence on this phase of the case is not very satisfactory. The president and the cashier of the bank testified in the case, but at no point do they squarely and in terms deny knowledge on their part of the rights of these interveners, nor do they testify in terms that they understood or believed that Michael was the sole owner of this property, or that, in taking said chattel mortgage, they acted and relied on the actions and conduct of the interveners. But, if it be assumed that the conduct of these interveners was such as to mislead the plaintiff bank, there lies behind this a more important question, which, to our minds, is controlling in the case. It is settled in this state that there is no estoppel unless the party claiming has been misled or induced to act in some way to his detriment. *Wright v. Lieth*, 146 Iowa 290; *Helwig v. Fogelsong*, 166 Iowa 715; *Schramm & Schmieg Co. v. Shope*, 200 Iowa 760. The party must also have acted or changed his position to his prejudice or injury, in reliance upon the conduct of the other party. *Eikenberry & Co. v. Edwards*, 67 Iowa 14; *Guest v. Burlington Opera-House Co.*, 74 Iowa 457; *Jamison v. Auxier*, 145 Iowa 654; *Augustine v. Gold*, 188 Iowa 551; *Farmers Sav. Bank of Williamsburg v. Pugh*, 204 Iowa 580. It is obvious that, if the party claiming the estoppel has not been harmed or injured, his claim must fail. See cases

supra.   That this is the almost universal rule, see 21 Corpus
Juris 1135, Section 136.

It becomes necessary, therefore, that we turn to the record,
to see where the plaintiff bank has suffered any substantial loss
or injury by reason of the conduct of the interveners.

As heretofore stated, this $10,000 chattel mortgage was
collateral to a real estate mortgage of $16,000 given by Thomas
and Michael on their quarter section of land.   The president of
plaintiff bank says that this note and mortgage were given as
additional security to the $16,000 mortgage.   He further testi-
fied that, at the time the $10,000 note was given, "we did not
pay him any money on that note, nor since then."   His testi-
mony as a whole shows that the consideration, if any, for this
$10,000 mortgage and note was wholly a past consideration.
Further, plaintiff bank, in return for said mortgage and note,
parted with nothing.   It is apparent, therefore, that whatever
the conduct of the interveners may have been, and upon the
assumption that plaintiff relied on such conduct, it has been in
no way prejudiced or biased, nor did it in any way change its
position to its injury or loss.   This claim of the bank, therefore,
as to an estoppel based on the conduct of the parties inter-
vener, must fail for want of sufficient evidence to support it;
and so far as the $10,000 mortgage is concerned, the claim of the
interveners that the mother was the owner of an undivided one
third, and each of the interveners of an undivided two twenty-
firsts, of said property must prevail.

As to the second count of plaintiff's petition, involving the
chattel mortgage of $4,000, dated April 17, 1924, this purports
to cover only the 1924 crops raised on the west 220 acres of the
 home farm.   This mortgage was executed by
Michael McCarthy individually, and what has
been said heretofore with reference to the
$10,000 mortgage and the plea of estoppel has
equal practicability here.   More than this, the evidence in the
case shows that the parties intervener and the mother agreed
that the mother's share in said crop should be that raised on the
east one third of said farm; and while there is serious conten-
tion here that some of these interveners stand impeached, under
the record, yet the mortgage under consideration recognizes, in
one sense of the word, such a condition because it only provides

for the crops raised on the west 220 acres of said half section. The bank, therefore, had no interest whatever in the crops raised on the east 100 acres of said half section. The evidence shows that the corn raised on the east portion of said land was understood between the parties to be the mother's share of the crop, and it was put into a crib by itself, and what the crib would not contain was piled on the ground at the end of the crib; and the sheriff levied on this corn, together with the other crops raised on the land. We think this corn was sufficiently segregated from the other corn raised on the land to hold that the same belonged to the mother, and was not covered by the mortgage herein, and therefore was not subject to the attachment sued out.

Plaintiff complains, however, that the crops raised on the east portion of said land were so confused and mixed with the general crops that they are not susceptible of identification; therefore that the mother lost her rights therein, by reason of such confusion. That such is not the law, when applied to facts similar to the facts in this case, see *In re Matter of Assignment of Thompson,* 164 Iowa 20.

It is apparent, therefore, that the levy by the sheriff of the attachment in this case, so far as the corn that belonged to the mother is concerned, was unlawful. It necessarily follows that the levy on the personal property on the place under this attachment is also unlawful, except so far as the interests of Michael and Thomas are concerned.

It is, however, insisted by appellant that, when the proceedings to foreclose the real estate mortgages were pending, a receivership was applied for, and the defendants therein, including Michael, Mary, Margaret, and Catherine, filed answer and resistance to the appointment of a receiver, and that certain of their testimony with reference to the $10,000 chattel mortgage, and also as to the crops, is wholly inconsistent with the claim they now make in the case, and that, because of their testimony in that case, the receivership was denied. We have not before us any of the records and proceedings in that case; but, if matters are as plaintiff contends, we are unable to see how it would work an estoppel in this case. Of course, this evidence was admissible to go to the credibility of these witnesses,

and for impeachment purposes; but further than this, we do not think it is effective.

The evidence shows that a very substantial part at least of the property described in the $10,000 chattel mortgage had been sold, from time to time, and the proceeds delivered to the plaintiff bank. We have not before us the return of the sheriff who levied this attachment, or an inventory of the property taken thereunder, and are, therefore, not in a position to determine what the specific articles are, and not in a position to make any judgment entry herein as to the specific property.

The evidence shows that, after the real estate mortgages were foreclosed and the property sold, the plaintiff bank used some $570 of the money which was the proceeds of the $4,000 chattel mortgage, to pay interest on a first mortgage on the land sold. This it had no right to do, and the district court should take this into consideration in entering final judgment herein.

No question is raised herein as to the inconsistency of attaching this property as against the mortgages.

The case will, therefore, be remanded to the district court for the determination of these matters, and for judgment in accordance with this opinion.—*Reversed and remanded.*

STEVENS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.