JOSEPH SEFCIK et al., appellants, v. DAVID L. SHEKER et al., appellees.

No. 47538.

(Reported in 41 N.W. 2d 709)

MARCH 7, 1950.

Shaw & Shaw, of Pocahontas, and Loth & Melton, of Fort Dodge, for appellants.

Frank P. Hogan, of Pocahontas, and Breen, Breen & McCormick, of Fort Dodge, for appellees.

SMITH, J.—Plaintiffs (and all defendants except David Sheker, individually and as administrator) are either heirs, or spouses of heirs, of Anna Vavricka, deceased. Her husband, John, died in May 1941. He left a will giving her all his personal property, a life estate in a town residence property, and an annuity of $700, constituting a lien on his two-hundred-acre farm. Subject to these provisions he devised all said real estate to their only child, Philomena Sheker, wife of David Sheker, whom we shall refer to as defendant.

At the time of John's death he and his wife, daughter and son-in-law had lived together for some time as one family on a farm he had previously deeded to his daughter. His own farm, involved here, was, however, being worked, and continued thereafter to be worked, by defendant.

A year or two after John's death the family moved to town and occupied the premises he had devised to his wife for life. There they lived until Philomena died, childless and testate in March 1947, devising all her estate to defendant. Thereafter the mother and her son-in-law continued to live in the home until she died intestate the following August.

Philomena had been named in her father's will as executrix but she declined to act, and defendant was made administrator with will annexed. The estate was closed June 2, 1942. The widow never made formal election to accept the provisions of her husband's will in lieu of her distributive share (which we shall for convenience call "dower"), nor was any statutory notice ever served on her to put her to such election.

However, defendant contended, and the trial court held, there was an election by reason of the widow's acts and conduct. Defendant also argues no election was necessary, which claim will be referred to later. From the decree against them plaintiffs have appealed.

Plaintiffs claim the widow's one-third interest in her husband's estate passed to her heirs. Defendant claims the entire estate by devise from his wife. The respective arguments of the parties will appear as we proceed. We shall not follow their order of presentation however.

I. The pertinent statutes as they stood in 1941 when John Vavricka died are the same as they stand today in the Code of 1946. Section 633.2 dates back to section 3270 of the Code of 1897, carried forward through the Codes of 1924 to 1939, as section 11847. It provides that a devise to a spouse shall be presumed to be *in lieu of dower* unless a contrary intent was manifested by the terms of the will. Under the previous Code of 1873 the presumption was the other way. Hahn v. Dunn, 211 Iowa 678, 685, 686, 234 N.W. 247, 82 A. L. R. 1503; In re Will of Foster, 76 Iowa 364, 369, 41 N.W. 43. This change wrought by section 3270 of the Code of 1897 is the only fundamental one since the Code of 1873. The doctrine prior to 1897 has "become obsolete." Hahn v. Dunn, supra. Other changes relate only to procedure in requiring election between devise and dower by a surviving spouse and in the statutory mode of making such election. With these we are only incidentally concerned here,

since there was no effort to require Mrs. Vavricka to elect and she in fact made no statutory election.

II. Plaintiffs argue there is no such thing under present statutes as nonstatutory consent *short of conduct resulting in estoppel.* Obviously the reference is to equitable estoppel or estoppel in pais. Curiously—and significantly—the basis for this argument is found in cases involving wills which became effective, not under present statutes, but under the Code of 1873. Byerly v. Sherman, 126 Iowa 447, 102 N.W. 157; Miksch v. Miksch, 179 Iowa 716, 721, 722, 161 N.W. 675; Ross v. Alleghany Theological Seminary, 204 Iowa 648, 651, 215 N.W. 710; Archer v. Barnes, 149 Iowa 658, 660, 661, 128 N.W. 969; Thorpe v. Lyones, 160 Iowa 415, 421-425, 142 N.W. 82; Koep v. Koep, 146 Iowa 179, 181, 123 N.W. 174.

The one exception we have found is Pring v. Swarm, 176 Iowa 153, 163, 157 N.W. 734, 737, in which the will became effective in 1910. But in that case the court did not say there could be no election by conduct short of estoppel. Instead it was merely held there was neither election nor estoppel—"no election having been made and no estoppel being established." There is cited Thorpe v. Lyones, Byerly v. Sherman, both supra, and Jones v. Jones, 137 Iowa 382, 114 N.W. 1066, all involving wills probated prior to 1897.

The significance of the time element lies in the statutory change already referred to made by the Code of 1897. It may be illustrated by the Miksch case, supra. In that case the will gave the widow a life estate but did not specify the devise was in lieu of dower. The statute (Code of 1873) contained no equivalent to section 3270, Code of 1897, creating the presumption of inconsistency between devise and dower. See cases cited in Division I, hereof.

There was therefore no occasion for election, the widow could take *both* unless in some way estopped as to one estate or the other. The defendants, evidently realizing the situation, pleaded and attempted to prove estoppel.

The opinion (179 Iowa at page 721) accepts the challenge as made:

"Assuming, for the purposes of the case, that the mother could, by her conduct with reference to the land, estop herself

from claiming anything more than a life estate therein, we have next to inquire whether there is shown in her conduct anything which makes it inequitable for her or her devisees to assert any greater or other right."

And again (page 722): *"Where, under the Code of 1873, the devise to the widow is not inconsistent with her claim of a statutory share,* if the doctrine of estoppel is ever to be applied in such cases, it certainly should require a very clear and conclusive showing of some deception or misleading act upon her part to the injury of others, to impose upon her the loss of her right either under the will or under the statute." (Italics supplied.)

This clearly does not refer to *election* between inconsistent alternatives but to a course of conduct sufficient to estop the survivor from claiming both devise and dower. See In re Estate of Emerson, 191 Iowa 900, 903, 183 N.W. 327; Arnold v. Livingston, 157 Iowa 677, 682–684, 139 N.W. 927.

Of course there is some similarity between equitable estoppel and election. Each is equitable in origin and each precludes someone from claiming anything inconsistent therewith. But they are quite dissimilar in their elements and in the quantity and quality of proof necessary to establish them. In a loose sense when one has elected one of two inconsistent choices he is estopped to claim the other. But this is not estoppel in its true sense, or in the sense argued by plaintiffs.

The elements of estoppel are generally understood. There must be conduct amounting to false representation or concealment and someone in reliance on it must be misled into doing or failing to do something he would not otherwise have done or have failed to do. 31 C. J. S., Estoppel, section 67(1); Peoples Savings Bank v. McCarthy, 206 Iowa 28, 32, 217 N.W. 453.

That element is not necessary to a valid election between devise and dower, at least under modern decisions. We have even held a valid election may be withdrawn or revoked provided others, acting in good faith in reliance thereon, have not changed their positions—that is, provided it has not resulted in estoppel. Nick v. Nick, 195 Iowa 351, 355, 189 N.W. 829; Wohlers v. Griesse, 179 Iowa 629, 161 N.W. 662. These decisions clearly imply an election need not be an estoppel. See McQuiddy Print-

ing Co. v. Hirsig, 23 Tenn. App. 434, 134 S.W.2d 197, 205; Myers v. Ross, D. C. Fla., 10 F. Supp. 409, 411. An election becomes a true estoppel when someone changes his position in reliance on it. See Norris v. Wilkens, Tex. Civ. App., 3 S.W.2d 126.

We do not imply there are no cases to the contrary. The case of Byerly v. Sherman, supra, involved a devise made expressly in lieu of dower. It was held the widow could renounce her dower only by *statutory* election or by estoppel, citing earlier cases (126 Iowa, pages 450–452). Yet, in that case, arising after 1897 but involving a will effective under the Code of 1873, there is a suggestion that the Code of 1897 has changed the rule (page 452 of 126 Iowa). We think the suggestion is justified. The decisions under that and later Codes seem definitely to have abandoned the idea that election by conduct must amount to estoppel. At least they are more cautious in choice of language. In some instances the election is referred to as having "the elements of an estoppel" or being "in the nature of an estoppel." Berry v. Donald, 168 Iowa 744, 747, 150 N.W. 1048, 1050; Wright v. Wright, 189 Iowa 921, 933, 179 N.W. 100, 104. We think the present doctrine of election is not based on any fundamental concept of estoppel in its technical sense of having misled someone to change his position in reliance on it. In re Estate of Emerson, supra; Arnold v. Livingston, supra; Hahn v. Dunn, 216 Iowa 637, 247 N.W. 672; Pabbeldt v. Schroeder, 202 Iowa 689, 210 N.W. 958.

We have dwelt at length on this contention of plaintiff because of its importance in the final determination of the issue of fact underlying the controversy. If equitable estoppel be the test of election by conduct we might agree the proof must, as plaintiffs claim, be "clear and conclusive." But we cannot concede the premise. Hence we need not discuss the conclusion.

Nor are we impressed by plaintiffs' argument that the change in or elaboration of procedure made by the legislature in 1919 (Thirty-eighth General Assembly, chapter 192) resulted in doing away with election by conduct short of estoppel. Section 3376, Code of 1897, provided: "The survivor's share cannot be affected by any will of the spouse, unless consent thereto is given within six months after a copy thereof has been served upon the

survivor * * * and notice that such survivor is required to elect * * *"—continuing with detailed directions for procuring statutory election.

The amendment of 1919, in prescribing more definite and elaborate machinery for requiring and making the statutory election of record says: "The survivor's share cannot be affected by any will of the spouse unless consent thereto is given *as hereinafter provided.*" (Italics supplied.) Then follows an outline of procedure substantially as now appears in section 636.22 et seq., Code of 1946.

It will be seen the beginning of the section remains unchanged: "The survivor's share *cannot be affected*" by the will *"unless consent thereto is given."* In each case the statute continues by stating *how* the "consent" is to be given and made of record. The fact that the amendment precedes the statement of procedure by the words "as hereinafter provided" adds nothing as indicating whether the statutory method is or is not exclusive. It merely ends the sentence in order to permit the procedure to be stated in greater detail and elaboration in a new sentence or section.

The effect of the 1919 amendment was questioned in Pabbeldt v. Schroeder, supra (202 Iowa 693, 694), but not passed on, as the testator died in 1918 and the conduct relied on as proving election occurred before the amendment became effective. But in Caldwell v. City of Ottumwa, 198 Iowa 666, 669-671, 200 N.W. 336, we considered the will of a testator who died in 1920, and held the widow, by her conduct thereafter, "waived" her right to distributive share. There is no mention of "estoppel."

We think the 1919 amendment did not do away with the possibility of effecting a nonstatutory election by conduct short of estoppel.

III. Plaintiffs also earnestly argue that inasmuch as defendant, as administrator under John Vavricka's will, was under the *duty* of serving upon the widow the notice necessary to require her to elect, he cannot now claim any personal advantage by reason of his breach of that duty.

This position is untenable. If the statutory method of election is not exclusive, and if it be found the widow did in fact elect in some other legal way, then defendant's failure to require

a *statutory* election had nothing to do with the situation. He is not profiting or trying "to profit by his own breach of duty." The natural result of such breach would have been *no election,* in which case the widow, or her heirs, would be entitled to claim her dower. Defendant was not working in his own interest in neglecting this duty. The fact that he may now claim the widow did in fact elect is not due to his breach but in spite of it. The cited Culbertson case (In re Estate of Culbertson, 204 Iowa 473, 215 N.W. 761) is not in point either directly or by analogy.

IV. In appraising the evidence to determine its sufficiency to prove an election by conduct the trial court was met by objection to defendant's competency as a witness under the "dead man's statute."

We approve the rulings of the trial court upon this objection. He rejected defendant's testimony identifying seven of defendant's canceled checks (aggregating $3350) "payable either to Anna Vavricka and endorsed by her, or to the bank or 'cash' for bonds for Anna Vavricka"; also other testimony involving personal transactions and communications. But he admitted defendant's testimony that Anna Vavricka knew the contents and provisions of her husband's, will.

This last mentioned testimony came in without objection (except the standing objection to the witness' competency) : "Q. Did she know what was in the old man's will? A. Yes, she did." There was no showing how the witness acquired this knowledge or that it was the result of or related to any personal transaction or communication.. There was no objection that the question called for a conclusion.

In determining de novo the question of election we shall follow the trial court's rulings as to defendant's competency.

V. It is argued on behalf of defendant: "It would seem as of the then existing [1941] statutes, that a widow had to elect in order to take her distributive share, and if she did nothing, it was conclusively presumed that such survivor consents to the provisions of the will and elects to take thereunder." And again, the closing words of the brief are: "* * * the theory of the law in 1941 appears to have been that if she did nothing she took under the will and that she had to act *affirmatively* if she wanted her *distributive* share."

This is of course inaccurate—in fact a complete misconception of the statute. See Peckenschneider v. Schnede, 210 Iowa 656, 227 N.W. 335. Section 12006, Code of 1939 (now 636.21, Code, 1946, formerly 3376, Code, 1897) expressly provided that the dower right could not be affected by any will of the spouse *unless consented to*. It was only after service of notice to elect upon the survivor that his *silence* resulted in a conclusive presumption of an election to accept the provisions of the will in lieu of dower. Since no notice was served upon Mrs. Vavricka the argument has no point here.

VI. We have here to determine whether there was an election by acts and conduct of the widow. The trial court found she knew the contents and provisions of her husband's will. This finding is based, not only on defendant's testimony, already referred to, but on other significant evidence.

On May 20, 1942, she signed a writing acknowledging receipt from defendant and his wife of $700 "for Payment of Annual Income from May 19th, 1941 to May 19th, 1942, as per will of John Vavricka, deceased." The fact that the receipt is not mentioned in the final report is not significant since the payment was not made nor was to be made out of the estate. The payment was due from testator's daughter. The discrepancy between date of payment and date due is likewise quite immaterial.

Attorney Hogan, a neighbor and friend of the widow, testified she told him "That all the property she—income she had was $700 from her husband's will, and that that income was being used for buying bonds * * *"; "that she felt so relieved that she didn't have to be bothered about paying taxes, insurance and upkeep on the property. She had all she cared to have—that would do her as long as she thought she would live, and she was an elderly lady." Also, "She said she didn't think it was necessary to draw a will—she had her bonds in such shape and form that it had a residuary beneficiary named in the bond." It is undisputed that at her death she owned bonds aggregating $3837.50, face value, all purchased subsequent to the death of her husband, $3100 of which designated her daughter as alternate payee.

While the fact that the widow continued (after the first year) to accept the annuity given her by the will may not be

capable of exact demonstration, it seems reasonably certain that the payments were made in substantial compliance with the will, and were so accepted by Mrs. Vavricka. Her statement to Attorney Hogan is quite convincing evidence in confirmation of that fact.

Considering the intimate family relationship existing between the widow and her daughter and son-in-law, it is not surprising that there was not strict, but only substantial, compliance with the terms of her husband's will. But while not strict, we think the parties, including the widow, intended what they did to constitute compliance. The fact the widow so accepted it is the important thing.

When John Vavricka's estate was closed the widow signed a voucher in which she acknowledged "receipt of all property from administrator with will annexed * * * in full payment of all moneys due me as heir, legatee, devisee or distributee" of decedent and "in full of all demands" against the administrator. She waived notice of hearing on final report and consented to its approval.

We do not share defendant's enthusiastic opinion that this document "contained *every statement or allegation* that would or could have been contained in a formal election." In fact, were it the only evidence of the widow's election to accept the provisions of her husband's will in lieu of dower, it would fall far short of being sufficient. However, read in connection with the final report which recited the provision of decedent's will for the surviving spouse, it has some probative value. .

The question is one of fact—did the widow "consent" to the terms of her husband's will which were, under the terms of the statute, "presumed" to be in lieu of dower? Sections 633.2 and 636.21, Code of 1946. Unfortunately the answer is not as clear either way as the optimism of the respective counsel would have us believe. It is at this point that our conclusion under Division II becomes determinative of the case. Were estoppel necessary the evidence would be insufficient. There is no evidence that defendant or his wife relied on the widow's conduct.

It must be remembered that no one act Anna Vavricka performed or failed to perform after her husband died in itself constituted the election. Each act becomes important only inso-

far as it tends to prove or disprove actual consent. We think the weight of the evidence requires a decision that she did consent, that she knew the terms of the will and had no thought or intention of claiming any dower, or of rejecting what the will gave her in lieu thereof. Whether she communicated her decision to anyone in so many words is unimportant except from an evidentiary standpoint.

Precedents are not usually helpful in passing on questions of fact. The diligence of counsel has not unearthed any cases that are particularly analogous here. Plaintiffs argue and cite cases to demonstrate that dower is the primary right. We need not review the cases as the proposition is unquestionable. But it is only one consideration.

They argue the proof of election must be "clear and satisfactory." That, too, may be admitted without being determinative of the issue. They say the conduct must be consistent with the will and inconsistent with anything else. Surely the $700 receipt "for Payment of Annual Income * * * as per will of John Vavricka, deceased" was consistent with the devise and inconsistent with anything else; and her statement to Attorney Hogan that all the "income she had was *$700 from her husband's will*" surely shows that however it was being paid and whatever it was called, it was being *accepted* by her in lieu of dower. Were the widow alive today, claiming her dower, these statements would stand as admissions against interest. They serve the same purpose here as against her heirs who stand in her shoes. The statement to Mr. Hogan is more than an expression of "a mere feeling of satisfaction" with the will. It is an admission that she was accepting, "consenting" to its terms.

It is true the occupancy of the premises in town might be consistent either with a life estate in the widow or with a tenancy in common by the mother and daughter. It tends to prove nothing either way since we do not know what if any arrangement there was between them in regard to it.

These items of evidence appraised in the light of the family relationship are, in our judgment, sufficient to show election by conduct to accept the provisions of the will. We have no doubt the widow consented.

While each case must be decided on its own peculiar facts we think the following lend some support to our conclusion: In re Estate of Culbertson, 204 Iowa 473, 215 N.W. 761; Hahn v. Dunn, 216 Iowa 637, 247 N.W. 672; Schubert v. Barnholdt, 177 Iowa 232, 158 N.W. 662; In re Estate of Emerson, 191 Iowa 900, 183 N.W. 327; Pabbeldt v. Schroeder, 202 Iowa 689, 210 N.W. 958; Arnold v. Livingston, 157 Iowa 677, 139 N.W. 927.

■ VII. Promptly after timely appeal was perfected, plaintiffs-appellants filed typewritten abstract and the reporter's transcript in strict compliance with rule 340(a), Rules of Civil Procedure. The proposed abstract has been certified to us for examination.

Thereafter defendant-appellee, pursuant to rule 340(c), filed amendment thereto demanding a setting out, practically verbatim, of the whole proceeding—pleadings, testimony (in question-and-answer form), objections, rulings, stipulations, comments, exhibits, and the order of appointment and answer of guardian ad litem for an incompetent, nominal defendant.

Over appellants' objection the record was settled in substantial compliance with defendant's demand. Appellants have appealed specially on that score and have filed motion to tax against defendant Sheker the cost of printing the record.

We would have been compelled to take some action on our own motion had there been no complaint by appellants. The record as presented is in shocking—almost contemptuous—disregard of both the spirit and text of rule 340. We have repeatedly called attention to and disapproved such violations. See Nelson v. Fisch, 241 Iowa 1, 39 N.W.2d 594, and cases therein cited.

It is true rule 340(d) permits a party, if he deems any portion of the testimony to be of particular importance, to set it out in question-and-answer form. But the whole spirit and purpose of the rule is to submit a *condensed* record omitting immaterial matter, to the end that the issues of fact and law may be clearly understood and considered.

Without criticism of the trial court here we may say the rule gives the trial courts much more control in settling records than they are apparently inclined to exercise. It is understandable that the court from whose decision an appeal is taken feels

some hesitancy in limiting the scope of the record. Nor can the judge always know to a nicety what propositions will be argued on appeal. To determine that is one purpose of the hearing contemplated by rule 340(c). The matter is under the trial court's control, and that control should be exercised within reasonable limits, to prevent immaterial and unnecessary verbosity.

The spirit of rule 340 requires co-operation between attorneys themselves and between them and the court, so that appeals may be fairly presented and justly determined. The court should insist on such co-operation. We are mindful of the problems of both attorney and court. Our Rules of Civil Procedure are the product of the thinking and judgment of both judges and lawyers. The aim is to serve justice. This service is more apt to be properly rendered on appeal if only essentials are included in the record.

It is difficult for us to enforce the rule without penalizing the innocent. Nevertheless we think the motion of appellants to tax to appellee the cost of printing the record should be sustained and it is so ordered.

The decree of the trial court is, however, affirmed.—Affirmed.

All JUSTICES concur.